Brenner, J.
Defendant, a fourth felony offender presently confined in the Green Haven State Prison under a 1953 sentence of fifteen years to life, brings this application in the nature of a writ of error coram nobis directed to the validity of a 1923 conviction in this court upon a plea of guilty to the crime of burglary in the third degree. The basis of his motion is his allegation that he was not advised of his right to counsel by retainer or assignment, that he was not represented by counsel at any stage of the proceedings, and that he did not waive his right to representation by counsel.
Defendant’s notice of this motion and supporting affidavit were presented to this court in December, 1954. There were later filed an opposing affidavit of the District Attorney, and *218 a reply affidavit of defendant. No hearing was held. The motion was in all respects denied, with opinion,. in an order entered March 1, 1955. Defendant appealed to the Appellate Division, Second Department, from the denial without a hearing.
The Appellate Division reversed the order, and remitted the motion for a hearing, on the ground that “ the extract from the minutes of the proceedings at the time appellant pleaded guilty, relied upon by the People to refute appellant’s allegations, does not conclusively establish that he was represented by counsel at that time.” The order of the Appellate Division so finding and directing, was entered October 17, 1955. (286 App. Div. 1029.)
Pursuant to the order this court held a hearing on December 14, 1955. The only witnesses were defendant Lynch in his own behalf, and, the Hon. William F. Bleakley, formerly County Judge of Westchester County, for the People. Documentary evidence, consisting almost exclusively of the old records of this court, was also received. From this evidence, testimonial and documentary, and from my own observation of the witnesses, I find the facts as follows.
William Lynch was arrested on July 29, 1923, for a burglary alleged to have been committed a week or so earlier, and was held by the City Court of Yonkers for the action of the Grand Jury, which, on August 24, 1923, indicted him and another man for the crime of burglary in the third degree. He was arraigned before County Judge Bleakley in White Plains on September 21, 1923, pleaded guilty as charged in the indictment, and was remanded for sentence. On October 1, 1923, Judge Bleakley sentenced Lynch to the Westchester County Penitentiary for a term of one year. The testimony of Lynch and Judge Bleakley is agreed that at no time in these proceedings was Lynch represented by counsel.
It appears that Lynch is fifty years old at this time, and would thus have been not quite eighteen years old when sentenced, his birthday anniversary being October 22d. While some confusion exists as to his actual age in 1923, arising from the entry “ age: 16 ” in his pedigree taken upon the guilty plea, Lynch testified that he was seventeen years old in September, 1923, and I so find, disregarding as redundant Ms testimony concerning the age of his twin brother in 1926. The pedigree, the source of which no doubt was Lynch himself addressing the clerk after his plea, further indicates that his parents were dead, that he was a laborer, that his education was “ sixth grade public school ” (apparently in Yonkers), and that he *219 had two previous convictions. Cross-examination of Lynch disclosed another previous conviction.
The prior convictions consist of a 1919 charge of juvenile delinquency, a 1922 charge of petty larceny, and a 1923 charge of burglary in the third degree reduced to unlawful entry. Though the pedigree refers to this last as a burglary conviction, an extract of the Supreme Court minutes, and Lynch’s present testimony, clearly show the reduction to the misdemeanor to which he pleaded guilty. Both the 1919 and 1922 charge seem to have come before Judge Bleakley who was then City Judge of Yonkers. On the petty larceny conviction, Lynch was sentenced to ten days’ imprisonment, and on the 1923 Supreme Court conviction, he received five years’ probation, which had of course, hardly been begun when he was convicted again in the County Court.
Upon cross-examination, Lynch admitted not only these three prior convictions, but eleven additional, for a lifetime total of fifteen, including the felonies of assault in the second degree (1930), reduced from robbery in the first degree, attempted robbery (1938) degree not given, and attempted grand larceny in the second degree (1953), reduced from robbery in the first degree. The assault second degree conviction (1930) was had in the Supreme Court before Judge Bleakley.
Lynch flatly states that at no time in Westchester County, prior to 1930, did he have a lawyer, thus contradicting the record of his Supreme Court conviction in May, 1923, which indicates that he was represented by “ L. P. Davis ” (obviously Hon. Lee Parsons Davis) at the time of his guilty plea. Indeed, he specifically denies it. More to the present point, however, are his assertions that he not only never had a lawyer in this court in 1923, but was never asked if he wanted one, was never told that he was entitled to one, was never asked if he had one, never spoke to one, and did not know what it meant to have a lawyer. Indeed, he claims that as late as 1930 when he was admittedly represented by counsel, retained by Mrs. Cosgrove, his aunt, he still did not know what a lawyer was, and did not hear about lawyers until “ the last couple of years ”, on the occasion of his 1953 conviction in New York County, where he consulted with an attorney from the Legal Aid Society, who asked him about having had counsel on his three prior felony convictions. I discredit this portion of Lynch’s testimony, for I cannot believe that one of his age and criminal courts experience did not find out about lawyers and their functions until his fifteenth conviction.
*220 What was his understanding and knowledge of this topic before Judge Bleakley in 1923 is quite another matter, however, especially since that testimony, and the People’s contention, concern an alleged waiver by Lynch of his right to counsel after having been properly advised.
Judge Bleakley recalled Lynch’s arraignment and guilty plea on September 21, 1923. It seems that on that morning when Lynch was being arraigned, a Mrs. Cosgrove (known to Judge Bleakley in his capacity as former City Judge of Yonkers as the aunt of the Lynch twins, who took them from an orphanage, made a home for them, and helped in their troubles with the law in the city of Yonkers), was present in the County Court, and Judge Bleakley saw her. He called her forward, and the following ensued:
“A. I knew her very well. And I said to Mr. Lynch — he was charged with the particular crime, and I asked him if he had counsel, and he said ‘ No,’ and I then turned to Mrs. Cosgrove and said ‘ Mrs. Cosgrove, have you any attorney for him,’ and she said ‘ Judge, I can afford it no more.’ I said ‘ Well, I can appoint counsel for Mr. Lynch,’ and I stated that I would be glad to appoint counsel for him. He said ‘ I don’t want any counsel,’ and Mr. Wallace then came up and said ‘ Judge, I am perfectly willing to defend Mr. Lynch as well as my own client,’ and I said ‘Mr. Lynch says he does not want any counsel.’ And I again said to him ‘ Do you want Mr. Wallace,’ and he said ‘ No.’ He then said to me that he had spoken to the District Attorney and he told him that he would make a recommendation for mercy on his plea. I asked the District Attorney if that were the fact, and he said that it was, and he was subsequently sentenced ”.
A little later, Judge Bleakley testified: “ Q. And you remember the particular occasion, on September 21, 1923, having distinctly advised him of Ms right to representation by counsel? A. I do, because I asked Mrs. Cosgrove if she was going to have counsel. Mrs. Cosgrove would always get some lawyer down there to help her. Everbody liked her and everybody was willing to help her, and when I saw her I called her up and asked her if she was going to get counsel, and she said ‘No. I have no more money to get counsel, ’ and she begged me to do as much as I could for John. Q. And you turned to Mr. William Lynch and asked him if he wanted to be represented by counsel and that you would be willing to assign an attorney for him? A. Yes, and he said he did not want any, because of the fact he had made an agreement with the District Attorney and that *221 the District Attorney was going to recommend mercy. The District Attorney stepped up and said that such an agreement had been discussed and that he was willing to recommend it.” Still later, he was asked whether Lynch was advised of his right to counsel and waived it at the arraignment when he pleaded, to which he answered simply, “ Yes.”
The witness related this occurrence concerning Lynch, whom he knew, to his usual practice and custom as County Judge, in this testimony: “ Q. Was it your practice and your custom, when you were County Judge of Westchester County, to advise every defendant when he was arraigned (1) of his right to counsel, (2) of his right to an adjournment to get counsel if he did not have counsel, and (3) of his right to plead guilty, at which time that would be considered a conviction under his plea? Did you advise every person of that who was brought in before you on an arraignment? A. Yes, I advised them in the event that they could not get counsel that I would designate counsel for them. Q. And that was a statement made by you to every person? A. I cannot say I was infallible, but that was my usual practice. Q. But you cannot say as a definite fact that the 30 or 40 people who were arraigned before you on September 21st, 1923, were specifically advised of their right to counsel, by you? A. No. If I did not recollect Mr. Lynch and had not known him so well, I would not have recollected what I did, and particularly because of Mrs. Cosgrove.”
A word as to “ Mr. Wallace.” This refers to Charles J. Wallace, of the Yonkers bar, then, as now, a well-known and well-regarded lawyer, who appeared for Lynch’s codefendant. At any rate, I am satisfied that he did, in view of the undisputed testimony mentioned above to the effect that Lynch was never represented by counsel. I need not decide whether the codefendant was Edward Safko, or Michael Stofko, whether Mr. Wallace or Mr. Klein represented Safko or Stofko, nor whether and to what extent the minutes of this court are in error. It is enough to say that this very confusion caused the Appellate Division to insist upon a hearing as to Lynch’s representation in fact, which is no longer questioned.
Lynch, on the other hand, denies knowing or speaking to Wallace though he admits inquiring about him among the guards at Sing Sing in October, 1953, before he received a copy of the court’s minutes of September 21, 1923. He also testified concerning a talk with “ a District Attorney ” about September 17 or 18,1923, during which that official pointed out his five years’ probation (“ he told me I could get five years for violating the *222 five years probation ”), and said “ he might give me a break but I had to plead guilty to the charge, and I told him I would do it. ’ ’ Lynch says he took this advice and pleaded guilty. This portion of his story is borne out, I see, by Judge Bleakley’s testimony quoted above. The conversation with the District Attorney was a few days after an earlier arraignment in which Lynch says he pleaded not guilty. There was no record evidence as to this pleading, nor any evidence whatever as to what took place, nor whether Lynch was then advised of his constitutional rights. There is no evidence as to what the committing magistrate may have advised him.
In these respects, the People seem to have assumed the infirmities of their case by placing themselves on the ground of proper advice, and a sufficient waiver, on September 21, 1923, when Lynch apparently changed his plea to one of guilty. This position, and the absence of other evidence, allows no other inference.
What Lynch’s mental capacity for such decisions was in 1923 is a matter of some speculation. He has little reading and writing ability, and has taken no such courses in prison all these years. He has no trade, except that he was a laborer in 1923, and in prison has usually been given porter or cleaning tasks. As I observe him on the witness stand in 1955, I judge him to be even now of fairly low intelligence, slow in comprehension of questions and in formulating answers, many of them indefinite, vague, or nonresponsive, with poor memory for certain items, and a much better recollection on matters which are quite important to his coram nobis proceeding.
I find Judge Bleakley’s testimony fully credible. His recollection was spontaneous, and his appearance voluntary; he remarked that he read the Appellate Division opinion in the Law Journal, recognized the name Lynch, “ felt duty bound to notify the District Attorney about it ’ ’, and communicated with Hon. Joseph F. Gagliardi, the District Attorney of Westchester County.
There are conflicts in the testimony, to be sure, particularly as to whether Lynch was offered Mr. Wallace’s services and declined them, and whether he was offered any counsel at all. But, since I credit Judge Bleakley’s testimony in these respects, the question, as I see it, is not whether these statements were made to Lynch, but whether he understood them, their legal implications, and the effect upon himself of any decision he might make, and of the decision he did make.
*223 In short, there are two questions, first, was Lynch properly advised by the court as to his constitutional rights to counsel and the advice of counsel (U. S. Const., 14th Amendt, N. Y. Const., art. I, § 6; Code Crim. Pro., §§ 8,188, 308); second, if so, whether Lynch effectively waived his rights ?
As to the first question, it more than suffices to point out that Judge Bleakley not only offered to appoint counsel for Lynch but offered to appoint by name an attorney who was standing right there at the bar, in the presence of the court, Lynch, and his aunt. It’s hard to see how Judge Bleakley could have been more solicitous or specific.
Secondly, I think it is clear that Lynch needed the help of an attorney; he was young, poorly educated, not very intelligent, and mistaken about his prior conviction for a misdemeanor which in Ms pedigree he apparently thought was a felony. An attorney could have ascertained the correct prior record easily. Lynch thought he could “ get five years for violating the five years probation ”, but a lawyer could have advised him fully. Certainly, it would have been far better for Lynch to have had his own attorney carry on a discussion with the District Attorney who, like any other lawyer, cannot serve two clients of hostile interests, and advise both properly and confidentially. All the implications of pleading guilty as charged, to a second felony, of a refusal or waiver of counsel, of the right to have counsel assigned to indigent defendants, of the right to have time for consultation with counsel before pleading, of the right to go to trial before a jury if the facts of the defense warranted, all these, I think, could easily have been brought to Lynch’s attention by a lawyer; on this record, he cannot be said to have been even aware of them, much less to have mastered them for purposes of thinking, weighing, and deciding. His need was plain (cf. Uveges v. Pennsylvania, 335 U. S. 437, 440-441) “ the due process clause * * * requires counsel for all persons charged with serious crimes, when necessary for their adequate defense, in order that such persons may be advised how to conduct their trials.” (See, also, Rice v. Olson, 324 U. S. 786, 788.)
A waiver of the rights to counsel must be made, it is said, “ understandingly, competently and intelligently ”. (Matter of Bojinoff v. People, 299 N. Y. 145, 151; Johnson v. Zerbst, 304 U. S. 458; Von Moltke v. Gillies, 332 U. S. 708, 729; People v. Richetti, 109 N. Y. S. 2d 29.) Defendant, in waiving, must act “ affirmatively, voluntarily, and consciously ”. (People v. Guariglia, 303 N. Y. 338, 342.) But these are not magic words, *224 producing an instantaneous and infallible result in every case by their mere mention; they are guides, keys, tests, and no more. These waiver cases depend upon their own peculiar facts: ‘‘ The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused ”. (Johnson v. Zerbst, 304 U. S. 458, 464, supra; note, The Right to Benefit of Counsel Under the Federal Constitution, 42 Col. L. Rev. 271, 277-280.)
A sixteen-year-old defendant did not effectively waive Ms rights, age being a crucial factor. (Matter of Bojinoff v. People, 299 N. Y. 145, supra; People v. Guariglia, 303 N. Y. 338, supra.) A mature, intelligent, alert, and educated woman, wife of a university professor, was held not to have effectively waived. (Von Moltke v. Gillies, 332 U. S. 708, supra.) A plea of guilty in a State court by an Indian accomplished no waiver, since Indians, like seamen, are wards of the court, and the special problems of Federal jurisdiction over Indians vis-a-vis the State courts, which would be difficult for a lawyer, called for extreme care in procedure. (Rice v. Olson, 324 U. S. 786, supra.) That defendant was an attorney of considerable experience did not automatically bring about a waiver, but the fact of that specialized knowledge may be considered. (Glasser v. United States, 315 U. S. 60.) Where it appears that the consequences of a guilty plea were fully explained by the court to an indigent defendant without counsel, his rights were not infringed. (Bute v. Illinois, 333 U. S. 640.) A person fifteen years of age when the crime was committed, and sixteen years when convicted upon a guilty plea, was not capable of committing the crime (Penal Law, § 2186) by reason of age; there being no valid waiver, his conviction was set aside. (People v. Adomaitis, 201 Misc. 707.) Previous conviction of a felony is not conclusive as to the intelligence of the waiver. (People ex rel. Moore v. Hunt, 258 App. Div. 24.)
But a sixteen-year-old who understood his right to counsel, but did not understand that the assigned counsel would serve without compensation, made an intelligent waiver. His interpretation of his rights was his own mistake, entitling him to no relief. (People v. Crimi, 278 App. Div. 997, affd. 303 N. Y. 749.) One who was advised of his right to counsel at arraignment but declined to use a lawyer and pleaded guilty, waived his right, because within four days thereafter he procured a lawyer, and did not, in the six weeks before sentence, ask permission to *225 withdraw the plea. (People v. Murphy, 202 Misc. 332; cf. Carter v. Illinois, 329 U. S. 173, and Canizio v. New York, 327 U. S. 82.) And, lastly, a seventeen-year-old, of meagre education, and without means to procure counsel, and who was advised to plead guilty to attempted burglary in the third degree by a probation officer, this being the only advice he received, did not “ competently and intelligently waive his right to counsel and did not comprehend the meaning and consequence of his plea of guilty. ’ ’ (People v. Carroll, 112 N. Y. S. 2d 227, 235.)
Upon the whole, therefore, I hold that William Lynch did not waive his rights to representation, intelligently, understandingly and competently. I find that he has overcome the presumption of regularity attaching to the judgment and the proceedings of this court, and has sustained the burden of proof cast upon him, (People v. Oddo, 283 App. Div. 497; People v. Hasenstab, 283 App. Div. 433) and that the People have not sustained their burden. (People v. Youlio, 214 App. Div. 793.) And when the waiver of rights is bad, the court is without jurisdiction to proceed on the indictment. (Johnson v. Zerbst, 304 U. S. 458, supra; People ex rel. Moore v. Hunt, 285 App. Div. 24, supra.)
The court wishes to express its thanks and appreciation for the full, careful and responsible presentation of this complicated motion to able counsel, Miles B. Suchin, Esq., assistant district attorney of Westchester County, and Harold Kronenberg, Esq., for defendant, assigned by the court for purposes of the motion. In addition, the court commends Mr. Kronenberg, not so much for his success, but for the time and effort he freely gave for the protection and vindication of the rights of an obscure convicted felon. Such professional loyalty to duty reflects great credit upon Mr. Kronenberg and the entire Bar.
The judgment of conviction and the sentence should be vacated and set aside, the plea of guilty as charged by the indictment should be allowed to be withdrawn as a nullity, and such further proceedings had on the indictment as may be warranted. Settle order on notice.