UNITED STATES of America ex rel.
William LYNCH, Petitioner,

v.

Edward M. FAY as Warden of Green
Haven Prison, Stormville, New
York, Respondent.

United States District Court
S. D. New York.

March 11, 1960.

Jaffe & Wachtell, New York City, for petitioner, David Jaffe and Herbert M. Wachtell, New York City, of counsel.

278

Louis J. Lefkowitz, Atty. Gen., of the State of New York, for respondent, William G. Ross, Asst. Atty. Gen., of counsel.

PALMIERI, District Judge.

The petitioner, William Lynch, filed under 28 U.S.C. § 2241 for a writ of habeas corpus challenging the validity of his detention by the respondent, Warden of Green Haven Prison, Stormville, New York. On March 10, 1958, this court, by order of Judge Gregory F. Noonan, granted the petitioner permission to proceed in *forma pauperis* and on May 14, 1959, Judge Noonan assigned the firm of Jaffe & Wachtell as counsel for the petitioner. On December 24, 1959, I issued the writ for the purpose of holding a hearing on the issues raised by the petition. A hearing was held on January 26, 1960, at which the petitioner and Dr. Thomas E. Tierney, a psychologist, gave testimony. The hearing adjourned to January 29, 1960, at which time Dr. Max Helfand, a psychiatrist, called as the court's witness, gave testimony. The minutes of the hearing were transcribed and have been filed with the Clerk as part of the record of this proceeding.

■ In October 1953, after pleading guilty to attempted grand larceny, petitioner was incarcerated upon a sentence of fifteen years to life as a fourth felony offender under the New York Multiple Offender Law. New York Penal Law, McKinney's Consol.Laws, c. 40, § 1942. The petition challenges the validity of the first felony conviction upon which petitioner's present sentence rests. That conviction was entered by the County Court of Westchester County on October 1, 1923 following petitioner's plea of guilty to burglary in the third degree. The maximum sentence which could have been imposed upon Lynch as a third felony offender was five years. See New York Penal Law, §§ 1297, 261(2), 1941. Since petitioner has been incarcerated under the judgment of conviction and sentence of October 1953 for over six years, the time he has served exceeds the maximum sentence which could have been imposed upon him were he a third felony offender. Cf. United States ex rel. Smith v. Martin, 2 Cir., 1957, 242 F.2d 701. It has already been determined that petitioner has exhausted his state remedies.[1] See Order of Judge Gregory F. Noonan, March 10, 1958 (S.D.N.Y.). Under the circumstances, petitioner properly seeks federal habeas corpus to challenge his continued detention.

The facts and circumstances surrounding petitioner's 1923 felony conviction are set forth in detail in the opinion of the Westchester County Court. People v. Lynch, 1955, 2 Misc.2d 217, 155 N.Y.S.2d 572. Since I accept the historic facts as found by that Court, see United States ex rel. Rogers v. Richmond, 2 Cir., 1959, 271 F.2d 364, certiorari granted 1960, 361 U.S. 959, 80 S.Ct. 605, 4 L.Ed.2d 541, a brief summary should suffice for present purposes.

On July 29, 1923, Lynch was arrested and a month later he was indicted by a grand jury for the felony of burglary in the third degree. He was then 17 years old and had three prior convictions, one for juvenile delinquency, another for petty larceny, and a third for unlaw-

1. On December 22, 1954, petitioner moved in the County Court of Westchester County for a writ of error *coram nobis* to vacate and set aside his 1923 felony conviction. A hearing was held before the County Court pursuant to direction of the Appellate Division, Second Department. People v. Lynch, 1955, 286 App.Div. 1029, 145 N.Y.S.2d 1. The County Court granted the petition and ordered that the 1923 judgment of conviction and sentence be vacated and set aside. People v. Lynch, 1955, 2 Misc.2d 217, 155 N.Y.S.2d 572. This order of the County Court was reversed by the Appellate Division. People v. Lynch, 1956, 2 A.D.2d 854, 155 N.Y.S.2d 849. Petitioner's application for leave to appeal to the Court of Appeals and his subsequent application for certiorari to the Supreme Court of the United States were denied. 1957, 352 U.S. 1011, 77 S.Ct. 581, 1 L.Ed.2d 557.

ful entry. Until reaching the age of 17, Lynch had attended public school in Yonkers, N. Y. When he left school he had not yet completed the sixth grade. Lynch was arraigned before County Judge Bleakley in White Plains, N. Y., on September 21, 1923, at which time he apparently withdrew an earlier plea of not guilty.[2] Judge Bleakley accepted Lynch's plea of guilty after having been advised of the District Attorney's representation to Lynch, a few days before the arraignment, that mercy would be recommended if Lynch would plead guilty. On October 1, 1923 a judgment of felony conviction was entered upon the plea of guilty and Lynch was given a one year prison sentence.

At no time in these proceedings was Lynch represented by counsel. However, at the arraignment Judge Bleakley, who knew of petitioner's indigence, asked Lynch if he wished to have counsel. Lynch replied that he did not. Judge Bleakley then offered to appoint an attorney who was present in the courtroom. Lynch again declined assistance, preferring, apparently, to rely on the District Attorney's promise to recommend leniency.

In its opinion on petitioner's *coram nobis* application, the County Court found that Judge Bleakley, who testified at the hearing, had been solicitous and specific in advising Lynch as to his right to counsel. That Court also found that Lynch had little reading and writing ability, that he had taken no courses during all his years in prison, and that he had no trade. Based on observation of Lynch's demeanor during his testimony at the *coram nobis* hearing, the County Court judged that Lynch was of low intelligence, slow in comprehension of questions and in formulation of answers. In view of Lynch's youth, education, and probable intelligence level in 1923, the County Court concluded

that he could not have waived his right to representation intelligently, understandingly, and competently. In support of this conclusion, the County Court pointed out that representations made to Lynch at the District Attorney's office prior to the arraignment before Judge Bleakley led Lynch to believe that he could "get five years for violating probation," and that Lynch was not advised as to all the implications of pleading guilty to a felony charge, of waiver of counsel, of the right to have time for consultation with counsel before pleading, and of the right to go to trial before a jury.

In a brief and somewhat ambiguous [3] memorandum opinion the Appellate Division reversed "on the law and the facts," the County Court order granting Lynch's application. People v. Lynch, 2d Dept. 1956, 2 A.D.2d 854, 155 N.Y.S.2d 849. The reviewing court apparently accepted the historic facts as determined at the hearing before the County Court but reached the opposite legal conclusion that Lynch "was well aware of the nature of, and was accorded, his constitutional rights." Hon. Marvin Dye, Judge of the Court of Appeals, denied leave to appeal on the ground that "the Court offered to assign counsel to represent [Lynch] and when [he] declined such representation [he] knowingly and understandably waived the same."

Petitioner's testimony at the hearing on his habeas corpus petition was substantially the same as his testimony at the *coram nobis* hearing. I have made no new findings based upon petitioner's testimony before me. Rather, I have accepted in full the basic facts appearing in the record of the proceedings in the state courts as to "the external events that occurred" at the time of Lynch's 1923 conviction, including "the clear and detailed testimony of former County Judge Bleakley,"[4] who presided at the

---

2. See 2 Misc.2d at page 222, 155 N.Y.S.2d at page 577.

3. Cf. United States ex rel. Sileo v. Martin, 2 Cir., 1959, 269 F.2d 586, 589–590.

4. See 2 A.D.2d at page 854, 155 N.Y.S.2d at page 850.

arraignment. See United States ex rel. Blank v. Jackson, 2 Cir., 1959, 263 F.2d 185. See also Note, 58 Colum.L.Rev. 895. In its opinion following the *coram nobis* hearing, the County Court noted that the question of Lynch's mental capacity in 1923 was a somewhat conjectural matter.[5] To render this pivotal issue less speculative [6] I directed respondent to turn over to counsel for the petitioner the results of tests administered while Lynch was incarcerated in state prisons. Information revealed by the Exhibits furnished in response to this direction is set forth below:

1. On April 23, 1930, Amos T. Baker, Director of Classification, Division of Psychiatry, Sing Sing Prison, rendered the following diagnosis:

"Not psychotic. Mental age 11½ years. He is a borderline type who is unable to attain economic success."

2. In December, 1938 Lynch was examined by a psychologist at Sing Sing Prison. His test results were reported as follows:

Age—33
Mental Age—11–2
I.Q.—74
Scholastic achievement—4.3
Educ. Age—9.9

At the hearing held on January 26, 1960, counsel for the petitioner called Dr. Thomas E. Tierney, a psychologist,[7] as an expert witness to interpret the test scores and to relate the results to the issue of Lynch's mental capacity in 1923. Counsel for respondent objected to the admission of Dr. Tierney's testimony and refused to cross-examine on the ground that Dr. Tierney was not a psychiatrist and therefore could not qualify as an expert witness. Since the questions put to Dr. Tierney concerned mental capacity based on intelligence test scores rather than mental disease, I was inclined to accept Dr. Tierney as a qualified expert witness. However, to avoid dispute and complete the record, I called Dr. Max Helfand, a psychiatrist,[8] as the court's witness. Although Dr. Helfand was cross-examined and his qualifications as an expert were conceded, counsel for respondent maintained his objection that the decision as to Lynch's mental capacity must be based on facts presented to the County Court at the arraignment in 1923 and not on an expert opinion elicited 37 years later.

Dr. Helfand's testimony was substantially in accord with that of Dr. Tierney. Both witnesses stated that an individual's mental age and I.Q. remain approximately the same despite changes in chronological age and that a person with a mental age of 11.2 and an I.Q. of 74 in 1938 would have had about the same ratings in 1923. Both classified a person with an I.Q. of approximately 74 as a borderline mental defective having markedly subnormal intelligence. Dr. Helfand explained that comprehension could not be expected on the part of a person with the level of intelligence indicated by petitioner's test scores unless such a person were talked to and treated

5. See 2 Misc.2d at page 222, 155 N.Y.S.2d at page 578.

6. In cases of this nature courts, of necessity, must deal with probabilities. See Blackburn v. State of Alabama, 1960, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242.

7. Dr. Tierney holds a master of Science degree in Educational Psychology and a Ph.D. in Psychology. From 1947 on he has been on the staff of Bellevue Hospital as a psychologist. His work at Bellevue includes the staffing of the clinic at the Court of General Sessions. In that capacity he has rendered reports and examined defendants with a view to advising the court as to whether such defendants were competent to understand proceedings and stand trial.

8. Dr. Helfand was chief attending neurologist and psychiatrist for the Department of Correction, New York City, for approximately 20 years. In the course of his work he has handled numerous cases involving persons of borderline intelligence and persons who claimed that the legal proceedings undertaken against them were tainted by some defect roughly similar in character to that claimed by petitioner.

as one would talk to and treat an eleven year old boy. Such a person, Dr. Helfand testified, would be capable of understanding things put to him in "a very simple manner, in simple terms," but would be "very easily suggestible and very easily threatened." It was the witness' opinion that a representation as to a possible five year sentence for parole violation would constitute a threat to a borderline defective and that a promise of clemency would be a particularly strong inducement for a borderline defective in view of his characteristic tendency to follow and his susceptibility to suggestion. Dr. Helfand also stated that such a person would be capable of understanding the nature and elements of the offense charged and the significance of his plea if, and only if, the judge explained the meanings to him in simple terms. In answer to the hypothetical question posed by counsel for the petitioner, both witnesses stated that the person described did not effectively, competently, and intelligently decline the Court's offer to provide an attorney.

On the basis of the record in the state court proceedings on petitioner's application for a writ of error *coram nobis* and the expert testimony adduced at the hearing before me, I have concluded that under the circumstances existing at the time of his arraignment before Judge Bleakley in 1923, Lynch did not understandingly, competently and intelligently enter a plea of guilty to the crime of burglary in the third degree. In reaching this conclusion I have given considerable weight to Judge Bleakley's testimony before the County Court in 1955, at the coram nobis hearing. Judge Bleakley stated that he did not explain to Lynch the implications of not having counsel and believed he had no ob-

ligation to do so after telling Lynch he could have counsel, offering to designate one for him, and ascertaining that Lynch had made an agreement with the District Attorney for leniency. From this testimony it is clear that Lynch was not given the type of simple and direct explanation that Dr. Helfand stated would be necessary in dealing with a person of petitioner's intelligence level. Nor can it be inferred that Lynch perceived the consequences of his plea of guilt. According to the expert testimony, a person in Lynch's position would have required specific and clear advice as to the meaning of a plea of guilty, the rights he might have if he did not plead guilty, and the consequences, immedidate and ultimate,[9] of a conviction for felony.

■ I do not wish to imply that Judge Bleakley acted unreasonably in assuming that petitioner comprehended his situation. In fact, if petitioner's mental capacity were normal I would not hesitate to deny the writ. See United States ex rel. *Hadley v. Murphy,* D.C.N.D.N.Y. 1959, 177 F.Supp. 788. Nor am I unmindful of the problem faced by the arraigning court in a case of this character. Indeed, much of our jurisprudence in this field has developed since the arraignment in question.[10] Nonetheless, I cannot escape the conclusion that petitioner was unable to comprehend the significance of his plea and that without such comprehension, the requirement of fundamental justice expressed in the Due Process Clause of the Fourteenth Amendment to the United States Constitution was not satisfied. Nor can I agree with respondent that this court, on habeas corpus review, cannot consider evidence as to mental capacity not presented to

9. Compare United States ex rel. Farnsworth v. Murphy, 2 Cir., 1958, 254 F. 2d 438, 443, with id., 254 F.2d at page 447. And see id., 358 U.S. 48, 79 S.Ct. 76, 3 L.Ed.2d 46.

10. See Beaney, The Right to Counsel in American Courts (1955); Hart & Wechsler, The Federal Courts and the Federal System, 1232–1268 (1953); Schaefer, Federalism and State Criminal Procedure, 70 Harv.L.Rev. 1 (1956); Fellman, The Right to Counsel under State Law, 1955 Wis.L.Rev. 281; Fellman, The Constitutional Right to Counsel in Federal Courts, 30 Neb.L.Rev. 559 (1951).

the County Court in 1923. Cf. United States ex rel. McCann v. Adams, 1943, 320 U.S. 220, 221, 64 S.Ct. 14, 88 L.Ed. 4. Allen v. United States, 6 Cir., 1947, 162 F.2d 193. But cf. Caritativo v. People of State of California, 1958, 357 U.S. 549, 550, 78 S.Ct. 1263, 2 L.Ed.2d 1531; Solesbee v. Balkcom, 1950, 339 U.S. 9, 70 S.Ct. 457, 94 L.Ed. 604. Petitioner would be left the remediless victim of his own limited power of comprehension if his mental capacity did not yield a basis for collateral attack on his conviction and sentence. If the scope of the writ is "an untidy area of our law," see Sunal v. Large, 1947, 332 U.S. 174, 184, 67 S.Ct. 1588, 1594, 91 L.Ed. 1982, perhaps it must remain so to permit the preservation of rights in exceptional circumstances such as those presented here.

## Conclusions

■ 1. "Special circumstances" existed at the time of petitioner's arraignment in 1923 on the charge of burglary in the third degree which required the state court to advise petitioner of his right to counsel and to offer to appoint counsel to represent him. See Gibbs v. Burke, 1949, 337 U.S. 773, 69 S.Ct. 1247, 93 L.Ed. 1686; Betts v. Brady, 1942, 316 U.S. 455, 462, 62 S.Ct. 1252, 86 L.Ed. 1595. And compare Chandler v. Fretag, 1954, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4, with Griffin v. People of State of Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. The acceptance of the plea of guilty, in the absence of representation or of a full explanation by the court, in lieu of counsel, as to the meaning and significance of a plea of guilty to a felony charge constituted a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See e. g., Palmer v. Ashe, 1951, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154; Uveges v. Commonwealth of Pennsylvania, 1948, 335 U.S. 437, 441–442, 69 S.Ct. 184, 93 L.Ed. 127; United States ex rel. Farnsworth v. Murphy, 2 Cir., 1958, 254 F.2d 438, 445–448 (Waterman, J., dissenting), judgment vacated 1958, 358 U.S. 48, 79 S.Ct. 76,

3 L.Ed.2d 46; United States ex rel. Marcial v. Fay, 2 Cir., 1957, 247 F.2d 662, 668, certiorari denied 1958, 355 U.S. 915, 78 S.Ct. 342, 2 L.Ed.2d 274.

■ 2. Petitioner's purported waiver of his right to counsel was not intelligently, understandingly and competently made. See Rice v. Olson, 1945, 324 U.S. 786, 789, 65 S.Ct. 989, 89 L.Ed. 1367; Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; United States ex rel. Farnsworth v. Murphy, supra.

■ 3. Petitioner's plea of guilty having been accepted in violation of his rights under the Federal Constitution, the judgment of conviction and sentence entered against him by the County Court of Westchester County on October 1, 1923 must be treated as void. Petitioner's conviction and sentence as a fourth felony offender in the Court of General Sessions in October 1953 cannot stand since it rests upon the 1923 felony conviction.

■ 4. Since the term of imprisonment already served by petitioner upon the 1953 judgment of conviction and sentence exceeds the maximum sentence which could be imposed upon him as a third felony offender, petitioner's imprisonment by respondent is illegal and in violation of the Fourteenth Amendment to the United States Constitution.

The Court expresses gratitude to assigned counsel, Messrs. David Jaffe and Herbert M. Wachtell, and wishes to commend them for the extraordinary care and competence with which they represented the petitioner herein.

The writ of habeas corpus is sustained. Respondent is given leave to move within five days from the date of this opinion, to stay petitioner's release from the custody of the United States Marshal pending an appeal from the judgment herein. If respondent brings such a motion and provides assurances that the appeal will be taken expeditiously, I will issue a stay pending further order of the Court of Appeals and will certify that there is probable cause for an appeal.

28 U.S.C. § 2253. Permission to petitioner to proceed in *forma pauperis* with respect to any appeal is hereby granted. The assignment of the firm of Jaffe & Wachtell as counsel will continue for all purposes pending further order by the Court of Appeals.

Submit judgment in accordance herewith.