Jose B. PEREZ, a/k/a James Winningham, Petitioner,

v.

STATE OF NEW YORK, Respondent.

United States District Court
S. D. New York.

Oct. 15, 1963.

Anthony Marra, Atty., Legal Aid Society, Gerald Zuckerman, and Leon B. Polsky, New York City, of counsel, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of New York, Lester Esterman, New York City, of counsel, for respondent.

BONSAL, District Judge.

Petitioner Jose B. Perez, a/k/a James Winningham, has filed a petition under 28 U.S.C. § 2241 for a writ of habeas corpus against the State of New York, challenging the validity of his detention by the Warden of Green Haven Prison, Stormville, New York.

On July 30, 1963 this Court, by order of Judge Thomas F. Murphy, granted the petitioner permission to proceed *in forma pauperis*. On September 10, 1963 I directed that a hearing be held on September 30, 1963, and assigned the Legal Aid Society to represent the petitioner at said hearing. The hearing was duly held, at which the petitioner was the sole witness.

Petitioner is presently serving a sentence in Green Haven Prison as a third felony offender under the New York Multiple Offender Law. In his petition he challenges the validity of his first conviction in 1943, which conviction was included in the basis for his present third felony sentence. He seeks to have his present sentence set aside so that he may be resentenced.

On February 26, 1943 petitioner was indicted by a Grand Jury for New York County on two counts—burglary in the third degree and grand larceny in the second degree. Essentially he was accused of breaking and entering an apartment in which he had previously lived, and of stealing from one of the persons with whom he had previously shared the apartment, wearing apparel, postage stamps, postal cards, photographs, a watch and two fountain pens, amounting to an alleged aggregate value of $228.

Petitioner was arraigned on March 2, 1943 before Judge Freschi of the Court of General Sessions, New York County, and pleaded guilty to the burglary count and not guilty to the larceny count. The minutes of the arraignment show that petitioner was asked by the Clerk whether he had a lawyer, and he stated he did not; he was then asked by the Clerk if he wished the Court to assign counsel, and he replied, "No. I wish to make a plea."

Petitioner appeared for sentence before Judge Freschi on March 16, 1943, again without counsel. The minutes of the sentencing show that petitioner was asked by the Court whether he wished a lawyer, and he replied "No sir". He was asked whether he wished any legal assistance whatsoever, and he replied "No". He was then asked by the Court whether he was willing to have his plea of guilty stand, and he replied "Yes". When he was asked if he had any statement to make prior to sentence, he replied, "I would like to go in the Army, that is all." He was then sentenced to an indeterminate term of 2½ years to 5 years in State Prison.

Following his sentence as a third felony offender, petitioner moved before the Court of General Sessions for a writ of coram nobis to vacate the March 16, 1943 conviction on the ground that he had needed legal assistance and had not competently waived his right to counsel. This motion was denied, without opinion, by Judge Dickens on July 9, 1957, without a hearing.

Defendant again petitioned for coram nobis relief on March 20, 1958. In denying the second petition without a hearing, Judge Dickens held that the record in the case disclosed "a consistent course of conduct indicating an unequivocal waiver of this right (to counsel)". The Court further held that petitioner had acted "with understanding and comprehension when he refused the court's offers to have counsel assigned to him", and that having voluntarily abandoned his right to counsel, he had no reason to make complaint at this late date (15 years later) that he was denied the opportunity to avail himself of his constitutional right. The Court further observed that it had denied a previous motion on July 9, 1957 made by the petitioner.[1] The Appellate Division, First Department, unanimously affirmed the order denying the coram nobis application, without opinion.[2] The Court of Appeals granted permission to appeal, and affirmed the order without opinion, by a 5–2 decision.[3] In a dissenting opinion, Judge Desmond took the position that the case should have been remitted to the Court of General Sessions for trial of the issue whether defendant was informed of his right to counsel and intelligently and understandingly waived that right.

Petitioner testified at the hearing held by this Court that he was arrested in February 1943 while he was standing in line for the purpose of taking a physical examination prior to classification and induction in the Armed Forces. According to petitioner, the arresting officer made arrangements so that his physical examination was taken, and petitioner was classified as 1–A. Petitioner further testified that the arresting officer asked him whether he had taken the property he was charged with stealing, and that petitioner admitted that he had done so. However, petitioner claimed upon cross-examination that he took the property with him when he moved out of the apartment, and that he did not commit burglary in taking the property. Petitioner testified that the arresting officer said to him that the crime was "nothing" and that the complainant would probably not "even press the charges". Petitioner said the officer also told him: " ' * * * you will go right into Service. I will see the judge, I will speak to the judge, so don't make the judge mad', or something like that." Petitioner testified that the officer advised him to waive examination or hearing by the judge in the Magistrate's Court, and that a police officer told him prior to his arraignment that if he pleaded guilty he would be allowed to go into the Army.[4] Petitioner said that he pleaded guilty because he wanted to go into the Army, and when asked on cross-examination whether it was true that he did not desire a lawyer at his arraignment and sentencing, he said he didn't want a lawyer because he didn't think he needed a lawyer if he was going into the Army. Petitioner testified that he was not told he was entitled to a lawyer at the State's expense, and that he had no funds at that time with which to hire a lawyer. Petitioner said no one explained to him the meaning of burglary in the third degree, the crime to which he pleaded guilty.

Petitioner's claim that he expected to go into the Army is corroborated in several respects by other evidence. Petitioner testified he was arrested while being processed for induction into the Armed Forces, and was permitted to complete processing before he was taken into custody. The United States was then at war, and it would no doubt have been reasonable for petitioner to believe that men who were guilty of minor offenses, as petitioner viewed his offense, would be allowed to enter the Army rather than

1.  People v. Winningham, 11 Misc.2d 650, 174 N.Y.S.2d 475 (Gen.Sess.N.Y.Co.1958).

2.  8 A.D.2d 707, 185 N.Y.S.2d 747 (1959).

3.  7 N.Y.2d 855, 196 N.Y.S.2d 991 (1959).

4.  Petitioner was not sure whether it was the arresting officer or some other police officer who made the statement to him prior to arraignment.

serve prison terms. The minutes of the Court of General Sessions show that at his sentencing, a court attendant said to the Court that the petitioner would like to go into the Army, and as mentioned above, petitioner himself, when asked by the Court whether there was anything he wanted to say, replied: "I would like to go into the Army, that is all." No other evidence was introduced at the hearing to substantiate or refute petitioner's claim that a police officer advised him to plead guilty, or told him he would be permitted to go into the Army if he pleaded guilty.

Between his arraignment and sentencing petitioner was examined at the psychiatric clinic of the Court of General Sessions, the results of which are contained in a report made by Robert Simonds, M.D., dated March 11, 1943, which was before the Court at the time of sentencing. The report states:

> "This defendant is without psychosis and is of borderline intelligence.
>
> "He is a psychopathic type of personality with pathological sexuality and he is dull and unstable. * * * *"

A psychologist's report of tests conducted at Sing Sing Prison in 1957 shows that petitioner was then functioning on a "dull-normal" level. Petitioner testified he had little schooling and spent much of his youth in correctional institutions.

The evidence is contradictory as to petitioner's age in March 1943 when he was arraigned and sentenced. Petitioner testified he was then 18 years of age. An endorsement on the original indictment charging the petitioner with burglary in the third degree, filed February 26, 1943, indicates that when the defendant was arraigned he was 24 years of age. An investigation report of the Probation Department of the Court of General Sessions, dated January 29, 1953, states that verified birth records indicate petitioner was born on December 18, 1922. If this birth date is correct, petitioner's age was 20 years and 2 months in March 1943.

The determination whether a defendant intelligently and understandingly waived his right to counsel rests on such factors as the defendant's intelligence, mental condition, education, age and experience, the nature of the charge against him, and the events leading to the waiver. Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); United States ex rel. Lynch v. Fay, 184 F.Supp. 277 (S.D.N.Y.), appeal dismissed as moot, 284 F.2d 301 (2d Cir. 1960).[5]

The Supreme Court in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799, decided March 18, 1963, held that the right to counsel of one charged with crime, as guaranteed by the Sixth

---

5. In Von Moltke v. Gillies the Court stated, at 723–724, 68 S.Ct. at 323–324, 92 L.Ed. 309 (footnotes omitted):

"We have said: 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

Amendment, is fundamental and essential to a fair trial, and is obligatory upon the States by reason of the Fourteenth Amendment. Although Gideon involved a failure to appoint counsel upon defendant's request and did not involve the issue of intelligent waiver of counsel that is here presented, Gideon serves as a guide to the determination of that issue. For in making clear that the right to counsel is fundamental, Gideon also emphasizes that the right to counsel cannot be deemed to have been waived unless the waiver is unequivocal and made with full understanding of its consequences.[6] This is especially true where, as here, the defendant is young, inexperienced and poorly educated. Cf. Moore v. Michigan, supra.

Other cases decided by the Supreme Court on the same day as Gideon further demonstrate the need for a careful and thorough evaluation of the adequacy of petitioner's waiver of counsel. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 (March 18, 1963) demonstrated the overriding importance of the principle that "if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release."[7] And Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (March 18, 1963), implemented that principle by requiring the federal court in habeas corpus to hold an evidentiary hearing where the facts are in dispute if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of trial or in a collateral proceeding.[8]

Both petitioner's applications for a writ of error coram nobis were denied without a hearing by the New York courts prior to the cases decided by the Supreme Court on March 18, 1963. Thus, the New York courts have not had an opportunity to pass upon the issue presented by petitioner in the light of these decisions. In the interests of comity, and the maintenance of proper federal-state relations, this Court believes New York should have a further opportunity to pass upon the merits of petitioner's claim. Cf. Otten v. Warden, Baltimore City Jail, 216 F.Supp. 289 (D.Md.1963), in which the United States District Court for the District of Maryland similarly deferred to the Maryland courts a decision on the merits of a state prisoner's habeas corpus claim that he had been deprived of counsel.[9]

Petitioner should therefore make another application in the New York courts for a writ of error coram nobis. It is hoped that upon such an application petitioner will be granted a hearing, or that the minutes of the hearing held by this Court will be made available. The Court also hopes that the Legal Aid Society, which is familiar with the circumstances of petitioner's claim and which represented him at the hearing before this Court, may be designated to represent petitioner in the state proceedings.

The petition is dismissed, without prejudice to the bringing of another petition for a writ of habeas corpus after petitioner has had recourse to the remedies available in the courts of the State of New York.

So Ordered.

6. See the cases cited at page 9, supra.

7. 372 U.S. at 402, 83 S.Ct. at 829, 9 L. Ed.2d 837.

8. 372 U.S. at 312, 83 S.Ct. at 756–757, 9 L.Ed.2d 770.

9. The Court understands that under New York law it is open to petitioner to present his claim by another motion for a writ of coram nobis, Bojinoff v. People, 299 N.Y. 145, 85 N.E.2d 909 (1949); People v. Sullivan, 4 N.Y.2d 472, 176 N.Y.S. 2d 316 (1958); People v. Morandi, 9 A.D. 2d 974, 193 N.Y.S.2d 710 (3d Dept. 1959), especially since the hearing conducted by this Court may be considered as new evidence by the New York courts.