E. Leo. Milonas, J.
On March 29, 1973, the defendant Jones was arrested and arraigned on charges of coercion in the first *768 degree, menacing, and sexual abuse in the first degree (Penal Law, §§ 130.65, 120.15, 135.65). The case was set down for a hearing on April 2.
In the hearing part, this court ordered that the defendant be examined pursuant to CPL article 730 to determine whether or not he was fit to assist counsel.
On May 1,1973, the defendant was examined by staff psychiatrists in the Bronx Criminal Court and refused to co-operate. The psychiatrists recommended that the defendant be transferred to the Bellevue Psychiatric Prison Ward for further examination. While at Bellevue, the defendant was examined ■by two other psychiatrists who, despite the defendant’s continued refusal to co-operate, found him competent to stand trial and not an incapacitated person within the meaning of CPL article 730.
The findings of the psychiatric examination, dated May 29, 1973, described the defendant as a “paranoid personality”, indicating further that the defendant is apparently capable of behaving in normal fashion. The defendant was found to be alert, coherent and logical, despite some moodiness and depression. His intelligence was rated as average.
The behavior and actions of the defendant in court appeared to belie the findings of the psychiatric reports. The defendant’s outbursts and erratic behavior exhibited in the courtroom gave the court reason to believe that the defendant was in need of psychiatric care and supervision.
The defendant has refused to co-operate with Legal Aid and subsequently refused to discuss his case with assigned counsel. On June 1, 1973, the defendant refused to leave the pens and the preliminary hearing was held in absentia, with his assigned counsel present. Subsequently, the assigned counsel requested that he be relieved and the defendant stated that he wished to defend in person, without assistance of counsel. The case was adjourned to June 29, 1973 for trial.
On June 29, 1973, the defendant Jones again refused to leave the detention pens at the court building. At my direction, a staff member of the Legal Aid Society, an Assistant District Attorney, and the court’s Law Assistant, together with a court reporter, visited the detention facilities to interview the defendant.
The defendant was advised of his rights and that his responses were not privileged or confidential. The Legal Aid attorney questioned the defendant to ascertain why he refused to appear in court. The defendant made reference to a note, *769 in the form of a motion, which he had sent to the courtroom earlier that day. In substance, it stated that he felt he was being deprived of his rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution.
When questioned further, the defendant indicated that by asserting his First Amendment right, he was asking that he be permitted to conduct his own defense, save for the opening and closing statements to the jury. He stated that he was willing to accept assigned counsel for those latter purposes, and “to prevent the District Attorney from pulling a fast one ” on him.
Until that point, the defendant answered the questions in a rational manner. However, he soon became unresponsive. He lapsed into a monologue in which he stated that he was suing all parties involved for the sum of $50,000. Thereafter, his response to every question was 1 ‘ $50,000 ’ ’.
When all the parties, except the defendant, who still refused to leave the pens, reassembled in the courtroom, the court noticed that a young woman and a child were still seated in the spectator section after the calendar had been called. The court asked the young woman which ease she was waiting for and she responded: “ Benjamin Jones”. She was asked to approach the bench and she identified herself as the defendant’s sister-in-law. She informed the court that the defendant had made threats to members of the family and that they were afraid that he might harm them if he were released.
The sister-in-law stated that the defendant had previously represented himself at arraignment on two other criminal matters and had those charges dismissed. Additionally, she showed the court a 1,000 page transcript from a civil case in which the defendant, acting as his own counsel, sued the City of New York.
In view of the defendant’s continued erotic behavior, his reexamination under CPL article 730 was ordered to be conducted by psychiatrists other than those who previously examined the defendant. A third psychiatrist examined the defendant on July 2, 1973 and his examination confirmed that the defendant was competent, under the provisions of CPL article 730, to assist counsel.
The court is caught in a dilemma of insuring the rights of the defendant while at the same time maintaining decorum in the proceedings. The following issues must be resolved:
*770 1. Does a defendant have an unqualified right to defend himself in a criminal proceeding?
2. Is the standard in determining fitness to act as one’s own counsel different than the standard for determining fitness to stand trial and assist counsel?
Section 6 of article I of the New York State Constitution provides that a person accused of a crime will have to appear and defend, in person, as well as with counsel. It has also been held that every defendant in a criminal case has a statutory right to the assistance of counsel and the correlative right to waive counsel and defend himself. (People v. Cunningham, 2 Misc 2d 162 [1954]; Matter of Hedgecock v. Oneida County Ct., 19 Misc 2d 459, app. den. 10 A D 2d 604.) However, such a waiver of the right of counsel could only be accepted where the accused acts understanding^, competently and intelligently. (People v. Witensky, 15 N Y 2d 392 [1965]; People v. Betillo, 53 Misc 2d 540 [1967].) (See, also, Matter of Lawrence S., 29 N Y 2d 206 [1971].)
The determination of whether there has been an intelligent waiver of the right of counsel must depend, in each case, upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused. (Johnson v. Zerbst, 304 U. S. 458, 464; People v. Lynch, 2 Misc 2d 217 [Westchester County Ct., 1955], revd. on other grounds 2 A D 2d 854.)
Where a defendant states that he desires to defend pro se, and at the same time evinces disruptive or potentially disruptive behavior, the court is presented with a problem for which no guidelines have as yet been established.
In Illinois v. Allen (397 U. S. 337 [1970]), the Supreme Court of the United States considered the question of the disorderly and disruptive defendant. The court concluded that although the trial court should make every effort to permit the defendant to remain in the courtroom despite his disruptive and disrespectful conduct, the removal of the defendant where necessary to maintain proper decorum is ‘within the Judge’s discretion and not constitutionally infirm.
The court stated (p. 343) that, “ It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of -elementary standards- of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given *771 sufficient discretion to rdeet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutional permissible ways for a trial judge to handle an obstreperous defendant”. The court, in Allen, suggested that the defendant could ¡be (1) bound and gagged, but permitted to remain present; (2) cited for contempt; (3) taken out of the courtroom until he promises to conduct himself properly. However, the circumstances in Allen are distinguishable from our case in that defendant Allen was represented by counsel.
The court is aware of the well-established principle that a person has the right to refuse counsel and represent himself at trial or at any stage of the proceedings, if it is established that he has an awareness of the situation confronting him. Likewise, the court is cognizant of the fact that counsel cannot be foisted upon a defendant. (People v. Jackson, 46 Misc 2d 742 [Sup. Ct., Kings County, 1965].) Nevertheless, there is reason to believe that the need may arise where the defendant, acting as his own counsel, may prevent the orderly conduct of his trial. If such a situation arises, it is apparent that the recommendation in Illinois v. Allen (397 U. S. 337, supra) will be of no avail.
At the State level, the statutory scheme contained in CPL 260.20 and subdivision 3 of CPL 340.50 deals with the problem of the unruly or disruptive defendant. These sections state, in material part, that where a defendant conducts himself in so disorderly and disruptive a manner that his trial cannot be carried on with him in the courtroom, he may be removed from the courtroom if, after he has been warned by the court that he will be removed if he continues such conduct, he continues to engage in such conduct. In such a situation the trial of the defendant continues without his presence. As stated in People v. Epps (71 Misc 2d 1075 [Sup. Ct., Kings County, 1972]), the refusal of a defendant to appear, or conduct by a defendant designed to disrupt or prevent his trial, cannot be permitted to break up a trial already commenced (Falk v. United States, 15 App. D. C. 446), or prevent a trial from being commenced.
Hnfortunately, the statutory design does not adequately deal with a defendant who is not only disorderly but who also acts as his own attorney. Decisional law on this question in other jurisdictions is remarkably sparse. In United States v. Dougherty (D. C. Cir., June 30, 1942), the argument that the *772 right to pro se representation could he denied if it could lead to the risk of disruption or the threat of interference with the effective presentation of the defendant’s case was specifically rejected. The Dougherty court concluded that the right to proceed pro se must be recognized if asserted before trial and if accompanied by a valid waiver of counsel. (See Seale v. Hoffman, 306 F. Supp. 330, 332 [N. D. Ill., 1969], revd. on other grounds 461 F. 2d 345 [7th Cir., 1972].)
The Dougherty court {supra) however, accepted the concept of limitation of waiver of counsel where a defendant demonstrated prior or subsequent disruptive conduct (May-berry v. Pennsylvania, 400 U. S. 455 [1971]), but stated that such conduct must evince an ‘ ‘ intent to upset or unreasonably delay ’ ’ the proceedings or must amount to ‘ ‘ intentional obstructive tactics. ’ ’ The trial court was admonished to explain to the defendant at the beginning of the proceedings the consequences of any disruptive behavior and to attempt to obtain his co-operation. Furthermore, the trial court’s discretion to revoke the right to proceed pro se was limited to situations where the defendant manifested an actual attempt to disrupt the proceedings, as opposed to mere interruptions to register an objection or ask for a qualification of a judicial ruling. Dougherty was interpretive of Federal statutes and was not intended to impinge upon a court’s discretion under applicable State law.
In People v. Sharp (7 Cal. 3d 448 [1972]), the California appellate court went still further. It held that the trial court did not abuse its discretion in denying the motion to defend pro se, but even assuming such an abuse, it was held to constitute harmless error. The court found that it did not appear reasonably probable that a result more favorable to the defendant would have been reached had he represented himself.
In New York there are no reported cases directly in point. In People v. Pitman (25 A D 2d 637 [1st Dept., 1966]) the trial court acceded to the defendants’ requests to defend pro se. The trial court, however, assigned two standby attorneys for each defendant to advise and assist them upon request. In that case, the defendants conducted their own defense and in addition, availed themselves of the advice of and assistance of the assigned counsel. As the trial progressed, the defendants permitted their assigned counsel to increase their participation in the conduct of the defense. The Appellate Division held that such an assignment of counsel did not prejudice or deprive the defendants of any rights, but rather, supplemented *773 the constitutional right of the defendants to conduct their own defense.
The court, in Pitman, was not, however, confronted with the problem of a defendant who might be psychiatrically unable to conduct his own defense even though capable of assisting counsel. In People v. Gonzales (20 N Y 2d 289 [1967]), the trial court directed a psychiatric examination to determine defendant’s mental ability to stand trial. <£ The report of the psychiatrists was guarded. They concluded that defendant ‘ is not psychotic in the legal sense ’ and, therefore, they felt £ he is able to stand trial and defend himself adequately at the present time’.” (p. 292). The psychiatrists’ report concluded that (p. 292): “From a purely psychiatric point of view, however, we would consider him an individual whose personality has become sufficiently altered and aberrant to warrant a diagnosis of psychiatric abnormality which is probably best described as a Paranoid State. We would consider this to be only in partial remission at this time.”
The Judge in Gonzales accepted the written report of the psychiatrist, without conducting a hearing on the question of defendant’s mental capacity to be tried. The Court of Appeals remanded the case, directing that the hearing be held on the question of the defendant’s mental capacity at the time of trial.
In the instant case, the psychiatrists’ report described the defendant as a “ paranoid personality”, despite the over-all conclusion that the defendant is not an incapacitated person within the meaning of GPL article 730. The provisions of GPL article 730 are concerned merely with whether a person, as a result of mental disease or defect, lacks the capacity to understand the proceedings against him or to assist in his own defense. The psychiatric examiner is not required to determine the capacity of the defendant to represent himself without the assistance of counsel.
This latter issue is the very question which this court seeks to resolve.
The court has conferred with several forensic lawyers and psychiatrists and has found mutual agreement that the standard for capacity to defend oneself is markedly different than that required merely to assist counsel. Indeed, some of the opinions elicited indicated that the classification of the defendant as a paranoid type might, in itself, be sufficient to render him incapable of conducting his own defense. Under the circumstances, in light of the defendant’s insistence to serve as *774 Ms own counsel, the court is duty bound to conduct a hearing to determine his capacity to proceed pro se.
Since the defendant is indigent and would be unable to hire a psychiatrist, the court, pursuant to section 722-c of article 18-B of the County Law, shall appoint a psychiatrist to examine the defendant. After the examination, the court will schedule a hearing to determine the defendant’s capacity to represent himself, and the psychiatrist appointed will be called to testify as to his findings on this issue.
Although this procedure may be novel it is, nevertheless, essential to safeguard the interests of the defendant as well as to insure the orderly function of the court at time of trial. Should it be determined that the defendant is competent but incapable of acting on his own behalf, the court will assign Appellate Division counsel. If, on the other hand, the defendant is found competent and capable to proceed pro se, standby counsel will be assigned to assist and advise the defendant upon request (see People v. Pitman, 25 A D 2d 637, supra).
Accordingly, the court will appoint a psychiatrist to examine the defendant, and, after such examination, a hearing to determine his competency under CPL article 730 and his capacity to defend pro se will be held.