No. 39,361

STATE OF KANSAS, *Appellee*, v. EDNA MAE HINKLE, alias EDNA MAE SPRATT, *Appellant.*

(269 P. 2d 465)

Opinion filed April 10, 1954.

H. N. Hyland, of Washington, argued the cause, and J. R. Hyland, of Washington, was with him on the briefs for appellant.

Rowland Edwards, county attorney, of Marysville, argued the cause, and Harold R. Fatzer, attorney general, and Paul E. Wilson, assistant attorney general, both of Topeka, were with him on the briefs for appellee.

The opinion of the court was delivered by

HARVEY, C. J.: The appellant, Edna Mae Hinkle, alias Edna Mae Spratt, was duly charged by an information filed in the district court of Marshall county with second degree forgery in ten counts, each count charging a separate offense. Upon a jury trial she was found guilty on seven counts and not guilty on three counts. Her motion for a new trial was considered and overruled and she was duly sentenced to imprisonment at the State Industrial Farm for Women at Lansing, Kan.

The checks described in the counts upon which conviction was had, with their respective dates, purported makers, payees, banks drawn upon and amounts are listed as follows:

| Date 1953 | Maker | Payee | Bank | Amount |
|---|---|---|---|---|
| July 10 | Edna Weiche | Montgomery Ward | Greenleaf State Bank Greenleaf, Kansas | $55.00 |
| July 15 | Lester Bolejack | Boogarts Supply Co. | " | 50.00 |
| Aug. 5 | Edna Clark | Hested Stores Co. | Community State Bank Hanover, Kansas | 35.00 |
| Aug. — | Ernest Clark | Safeway Stores, Inc. | State Exchange Bank Barnes, Kansas | 40.00 |
| Aug. 13 | Lester Bolejack | " | Greenleaf State Bank Greenleaf, Kansas | 45.00 |
| Aug. 15 | Oscar Samsel | " | State Exchange Bank Barnes, Kansas | 50.00 |
| Aug. — | Henry Samsel | Ben Franklin Store | " | 30.00 |
| | | | Total | 305.00 |

She has appealed and contends the court erred (1) in overruling her counsel's motion that she not be required to be present during the trial; (2) in failing to grant immunity to her under the inquisition statute; (3) in admitting evidence of a sample of her handwriting taken at such inquisition and the insufficient proof that the sample was voluntarily given; (4) in permitting evidence of a handwriting expert; (5) in refusing to sustain her demurrer to evi-

dence and motion for discharge; (6) in allowing the endorsement of additional witnesses on the information after the trial commenced; (7) in permitting the amended information to stand since it charged another and distinct offense from that charged in the complaint; (8) in permitting further testimony of new matter by the expert witness; and, (9) in permitting the charge in count one to stand, there being a fatal variance between the charge and the evidence produced.

Appellant's correct surname is Spratt but for some reason is frequently called by her maiden name of Hinkle. At the trial in October, 1953, she testified that she was thirty-four years old; that before her marriage she had lived with her parents on a farm near Greenleaf; that she attended grade school and four years of high school; that she was married to Arthur Spratt and lived with him nine and one-half years and was divorced in June of 1951; that she has a child eleven years old and received $30 per month child support; that since her divorce she had worked at the Perry Packing Plant at Hanover, Kan., and later at the Jayhawk Cafe in Marysville, Kan., where she received about $20 per week. She denied cashing any of the checks.

The evidence makes it clear that each of the checks was a forgery. There is no contention to the contrary. There was evidence also that appellant passed each of the checks, by witnesses the court and jury were justified in believing, and this is controverted only by defendant's plea of not guilty and her testimony that she did not cash or pass any of the checks and had never seen them before the trial. We shall summarize the evidence as to her passing only one of them.

On July 10, 1953, a lady went to the Montgomery Ward store at Marysville and bought about $12 worth of merchandise. She gave the clerk who waited upon her, Mrs. Saville, a universal check on which only the name of the drawer "Edna Weiche" was written and gave the clerk to understand that was her sister. She requested the clerk to fill in the check by writing the name of the drawee as the State Exchange Bank, Barnes, Kan., the payee as Montgomery Ward & Co. and the amount as $55. The clerk did this and then took it to the assistant manager, Mr. Nelson, for his approval. He okayed the check but directed the clerk to have the lady endorse her name on the back thereof. The clerk reported this to the lady who expressed reluctance but did endorse on the back of the check the

name "Mrs. Linda Smith, Barnes, Kansas." The clerk cashed the check giving the lady the difference between the price of the goods purchased and amount of the check. A few days later the lady was in the store and talked to Mrs. Saville and remarked to her that she sure did hate to sign her name on that check. Sometime later the check was returned to Montgomery Ward by the Barnes bank marked, "no account—try Greenleaf Bank." The manager of the store, Mr. Rayborn, knew Edna Weiche as a customer and upon looking up her account found her bank was the Greenleaf State Bank. Learning from Mrs. Saville the circumstances of her taking the check Rayborn assumed the Barnes bank was written inadvertently and instructed the bookkeeper to write in the name of the Greenleaf bank over the name of the Barnes bank. This was done and the check was again sent through for collection. It was later received from the Greenleaf bank marked, "signature of drawer forged." In the meantime the county attorney had been advised by several different parties of forged checks.

On August 18, 1953, Mr. Rayborn took the check to the county attorney who prepared a complaint charging forgery against Jane Doe, alias Linda Smith, which was signed by Rayborn. On the next day the county attorney filed with the county court an "Affidavit in support of deposition." This recited briefly the fact that the check was given to Montgomery Ward; that the affiant was informed and believed the name Edna Weiche on the check and the endorsement of Linda Smith were forgeries, and that the crime of forgery was committed by some person. It included a request that subpoenas be issued for witnesses named in a praecipe that day filed with the court for the purpose of testifying concerning offenses against the laws of the state. Upon the strength of that affidavit the judge of the court issued a subpoena for Edna Mae Hinkle, also known as Edna Mae Spratt, Mrs. Tom Saville, and Mr. Donald Nelson. The sheriff took the subpoena and went to the Jawhawk Cafe and inquired for Edna Mae Hinkle and was told she worked there but it was not her hours for work. When appellant returned to the cafe she was told the sheriff had been there and inquired for her and she called the sheriff and asked if he wanted to see her and was told he did. Appellant went then to the sheriff's office where he gave her the subpoena and they went to the county court. There were present the county judge, the county attorney, two employees from Montgomery Ward, and the sheriff.

The appellant was not sworn. No court reporter or anyone else made a record of what was done. There were no questions and answers in the ordinary sense of examining a witness. We learned what took place from the sheriff, the judge of the county court, and the appellant. The county attorney did not testify.

Mr. Branson, the sheriff, testified that on or about the 19th or 20th day of August he brought into the office of the county judge for questioning Edna Mae Hinkle; that she was requested on that occasion to give a sample of her handwriting to aid in their investigations; that she complied with that request. The fact that there was a forged check and they were trying to locate the forger of that check was explained to her. They then went to the judge's office and there they explained to her what the case was about and asked her if she would be willing to give some samples of her handwriting and she said she was. She signed the names on the front and back of the checks of her own free will. She signed the name of Edna Weiche on two checks and wrote the name of Linda Smith on the back of two checks. She was told there was a controversy; that there had been a bunch of bad checks around town which they were trying to clear up and asked for her assistance..

P. R. Pulleine, judge of the county court, testified that the county attorney informed Mrs. Hinkle that numerous bad checks had been given and they were trying to ascertain who passed them. He was asked: "Was she told that she had to sign the checks?" He answered: "No." He stated he was rather vague about the exact words used in the conversation but he thought she was fully advised what her rights were, that she did not have to sign them, it was of her own free will. That, in fact, Mrs. Hinkle was rather anxious and willing to sign them and the county attorney didn't any more than ask her and she signed them. She signed some checks, there were two or more, she didn't ask to be excused from giving her handwriting and she didn't claim immunity.

Appellant testified about going to the sheriff's office and who were there. She said:

"They asked me if I would write my name on the checks—not my name but Edna Weiche—and I told them I would and went ahead and wrote those names just like they asked me to."

W. H. Quakenbush, an examiner of questioned documents, commonly known as a handwriting expert, testified that he had examined the name "Edna Weiche" on a check cashed at Montgomery

Ward & Co. on July 10, and compared it with other known writings of appellant and gave as his judgment that they were written by the same person. The other known writings used for comparison were the writing by appellant before the county attorney when she appeared there as above stated; the words "Mrs. Linda Smith, Barnes, Kansas" written on the back of the check cashed at Montgomery Ward & Co.; her signature card at the Community State Bank at Hanover, Kan., where she had an account at one time; an old check she had written in August of 1947 and another in September of that year; and, two envelopes and a Christmas card all bearing her admitted signature. Mr. Quakenbush gave similar testimony with respect to the questioned writing on the other checks.

We turn now to consideration of the legal questions presented.

When the case was called for trial the court asked if the parties were ready. Counsel on each side replied in the affirmative. The court then asked if the defendant was present; her counsel stated that she was somewhere about but that she waived her right to be present at this time. The court expressed the view that it thought it important for defendant to be present at all stages of the trial. Her counsel took the position that it was a privilege only which she could waive. After some discussion the court adhered to its view and directed her counsel to have defendant appear in the courtroom. She came into the courtroom and took a seat back of the rail and the court directed that she take a seat inside the rail. Later in the examination of the jury she was asked to stand so the jury could see who was on trial and they could be interrogated with respect to their knowledge of her. Counsel for appellant complain of this ruling. We think it was not erroneous. Our pertinent statute, G. S. 1949, 62-1411, reads:

"No person indicted or informed against for a felony can be tried unless he be personally present during the trial; . . ."

Counsel for appellant cite several of our cases, *State v. Maxwell,* 151 Kan. 951, 102 P. 2d 109, and cases cited p. 958, where a defendant was at liberty on bond and knowing that a certain matter would be taken up at a specific time was not present and after his conviction claimed his conviction should be reversed because he was absent when something was done and the circumstances were such that the court held he had waived his presence, a thing he had a right to do if he desired. Under those authorities counsel for appellant in this case contend that she could waive her right to be present at all

times. The contention is not well taken. The language with reference to defendant's right to waive his presence used in those opinions must be limited to the facts therein stated. More than that, in each of those cases, the defendant personally claimed the waiver. Here her attorney, alone, made the claim. This procedure is not recognized by any of the authorities. See, 23 C. J. S. 309, and authorities there cited. In view of our statute, just quoted, we think it unnecessary to go into an elaborate discussion of the question. Those interested may find a full discussion in Bishop's New Criminal Procedure, 2nd Ed., Vol. 1, Ch. 18; 23 C. J. S. 303, *et seq.;* and, 14 Am. Jur. 875, 906, 907.

Counsel for appellant argued that the court erred in failing to grant immunity under the inquisition statute, G. S. 1949, 62-301, and by admitting evidence of a sample of her handwriting taken at such inquisition. The record discloses that the inquisition as spoken of in this case was somewhat abortive. The county attorney started an inquisition proceedings and properly had subpoenas issued for three witnesses including the appellant. She went to the sheriff's office in response to a subpoena. There the regular procedure of an inquisition seemed to stop and the procedure thereafter was quite informal. We do not regard that fact as being very material. The test is whether she was *compelled* to testify to any matter which was later used in the prosecution against her. See, *The State v. Sacks*, 116 Kan. 148, 225 Pac. 738. The real test is whether she was compelled to testify. See, also, *The State v. Backstrom*, 117 Kan. 111, 230 Pac. 306, where it was held:

"One who testifies without objection at an inquisition held by a county attorney under the prohibitory liquor law may thereafter be prosecuted for any violation of that law concerning which he testifies."

In that case the inquisition was held under what is now G. S. 1949, 62-301. Many authorities are cited in support of the holding of the court. Whether you consider the evidence of the sheriff, the judge of the county court, or the appellant it is clear in this case that whatever she did that was detrimental to her on that occasion was willingly done. She was not compelled to do anything.

We have examined each of the other questions argued by appellant and find no substantial merit in any of them. We think it unnecessary to discuss each of them separately. No material error is disclosed by the record. The judgment of the trial court is affirmed.