Louis B. Heluer, J.
The defendant moves to vacate the verdict of the jury rendered on July 27, 1972 convicting him of assault in the first degree, sodomy in the first degree, and two counts of assault in the third degree, upon the ground that continuing the trial in his absence violated his constitutional and statutory right to be present.
The trial commenced on July 20, 1972. The defendant was present on July 20, 21 and the afternoon of July 24. His attorney was present throughout the trial. Selection of the jury was completed on the morning of July 21.
At the afternoon session on July 21 one of the complainants gave her direct testimony. What she said is relevant to the defendant’s motives for his refusal to attend the trial and to the merits of his claim to invalidate the conviction.
She testified that on March 17, 1972 she, the other female complainant and the defendant were in an apartment in Brooklyn. He induced a estate of fear in their minds by demonstrating that his Doberman pinscher dog would obey his command and by asserting that “if any one of [them] moved, that dog was going to bite [them] ”, Thereafter he struck both women, who were in the nude, numerous, blows across their backs with a belt and engaged in brutal, deviate, animal-like sex acts with complainants. The defendant, having concluded his day’s activities, stated that he was tired, and went to sleep. The witness escaped from the apartment and notified the police. The defendant was still asleep when they arrived.
The defendant did not appear in court on the morning of July 24. The court instructed the defendant’s attorney to inform the defendant that it directed him to be present at 2:00 p.m. The defendant appeared at that time. His attorney stated, “ I have given the defendant my advice and he decided to come back ”, The trial was resumed and the court day concluded *1077 with the female witness still under cross-examination. The court warned the defendant to be present the following day and stated that if he was not there the case would be tried in his absence.
On July 25 the defendant failed to appear. Captain Fasano of the Department of Correction testified that the defendant was one of the prisoners at the Brooklyn House of Detention who refused to come to court. The captain was instructed by the court to telephone the jail and have the defendant informed that he was directed to come to court, that if he did not appear the court intended to proceed with the trial in his absence, and to get his answer. If the defendant stated he would be present at 2 o’clock, the captain was authorized to state that the court would wait for him. The captain was recalled and testified that he had made the telephone call, the court’s message had been given to the defendant and the defendant refused to come to court.
After that testimony, the following appears of record: ‘ ‘ the court : You were down and you warned the defendant yesterday, did you not, that if he is not — if he doesn’t appear here, I will try it in his absence, is that correct?
‘ MR ZASLAV: Yes. * * *
‘ ‘ the court : * * * The defendant was warned by you when he came here at two o ’clock. He sat through until the case was finished, around four o’clock. I warned him again. I asked him if he’d come here, he answered, yes. And now he refuses to come. * * *
“ hr. zaslav : May I just correct — when you talk about my position, my position I take will not be on a voluntary basis. It would come about as a result of the facts here, that I do not have a defendant present at defense table to correct anything that’s being said.
“ the court: That’s the defendant’s own making. If he chooses to do that, that’s his responsibility.”
The trial was continued in the absence of the defendant; and the other complainant was examined and cross-examined. Two police officers also testified.
On July 26, the defendant again did not appear in court. Captain Fasano was recalled. He testified that the court’s message, directing the defendant to appear and warning him that the trial would proceed in his absence, was conveyed to the defendant; and that he refused to come to court. The court directed the captain to again call the prison and inform the defendant that he still had a further opportunity to appear at 2:00 p.m. The trial was continued.
*1078 After the luncheon recess the captain testified that he had communicated with the defendant and that the defendant refused to appear and had stated, “ He is not interested
The medical testimony was received, after which the People rested. On motion of the defendant’s .attorney the court dismissed all counts in the indictment except Counts Nos. 2, 3, 4 and 12.
The defendant’s attorney rested, stating that since the defendant was not present, he did not know whether the defendant wished to testify. The following colloquy took place: ‘ ‘ the court : I will give you every opportunity to go over to the jail and I will wait here for you until you have a discussion with him, and ask him whether, having heard my decision on these counts, whether he wants to come and testify.
“ mr. zaslav : If your Honor please based on the advice that I had given the defendant, I at this time rest.
“ the court: In other words, your advice would be that he shouldn’t testify?
“ mr zaslav: That’s correct.
“ the court: All right. You rest then?
“ MR. zaslav: Right.”
The jury returned a verdict of guilty, in the absence of the defendant, on July 27.
The question presented is whether a defendant in custody, in a noncapital case, can stop the progress of a trial after it has been commenced in his presence with counsel and some testimony taken, by voluntarily absenting himself, thus defeating the ends of justice, or may the court proceed and finish the trial in his absence.
The defendant contends that the court violated his constitutional and statutory rights when it continued the trial in his absence.
The right of a defendant to be personally present at his trial for a felony is embodied in the Sixth and Fourteenth Amendments of the Federal Constitution, section 6 of article I of the New York Constitution and CPL 260.20.
CPL 260.20 provides: “ A defendant must be personally present during the trial of an indictment; provided, however, that a defendant who conducts himself in so disorderly and disruptive a manner that his trial cannot be carried on with him in the courtroom may be removed from the courtroom if, after he lias been warned by the court that he will be removed if he continues such conduct, he continues to engage in such conduct. ’ ’
*1079 The last clause or proviso of the section was added to implement Illinois v. Allen (397 U. S. 337, 343), which held that a defendant can lose his right to be present at ¡a trial if he conducts himself “ in a manner so disorderly, disruptive, and disrespectful of the court that a trial cannot be carried on with him in the courtroom ’ \ This right to be present in the courtroom at each stage of the trial has been denominated a “ basic right ” guaranteed by the Sixth Amendment and the due process clause of the Fourteenth Amendment (Lewis v. United States, 146 U. S. 370; California v. Green, 399 U. S. 149; Illinois v. Allen, supra, p. 338; People ex rel. Bartlam v. Murphy, 9 N Y 2d 550; People ex rel. Lupo v. Fay, 13 N Y 2d 253, cert. den. 376 U. S. 958), and is binding upon the States (Pointer v. Texas, 380 U. S. 400; Dutton v. Evans, 400 U. S. 74, Illinois v. Allen, supra).
In the Federal courts rule 43 of the Federal Rules of Criminal Procedure (TJ. S. Code, tit. 18, Appendix) provides in part: “ In prosecutions for offenses not punishable by death, the defendant’s voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict.” The rule is only a restatement of the defendant’s constitutional rights and its protections can be waived by the defendant’s conduct (United States v. Tortora, 464 F. 2d 1202, 1210). The New York CPL contains no similar provision. This court agrees with the holding in Tortora, although in that case the defendant failed to appear on the date fixed for trial and the court proceeded in his absence. Here, of course, the trial was well under way when the defendant absented himself.
The right to be present at the trial may be waived by the defendant in a noncapital case (People v. Thorn, 156 N. Y. 286; People v. La Barbera, 274 N. Y. 339; People v. Winship, 309 N. Y. 311; People v. O’Keefe, 281 App. Div. 409, affd. 306 N. Y. 619; People ex rel. Lupo v. Fay, 13 N Y 2d 253, cert. den. 376 U. S. 958, supra; People ex rel. McBride v. Fay, 19 A D 2d 712, affd. 14 N Y 2d 843).
The statement in Hopt v. Utah (110 U. S. 574) and Lewis v. United States (146 U. S. 370) that a trial could not continue in the defendant’s absence was expressly rejected in Dias v. United States (223 U. S. 442). The Sixth Amendment right to be present is not absolute. It may be waived by acts or statements of the defendant (Diaz v. United States, supra; United States v. Dalli, 424 F. 2d 45, cert. den. 400 U. S. 821; United States v. Crutcher, 405 F. 2d 239, cert. den. 394 U. S. 908). The privilege of personally confronting witnesses may be lost “by consent *1080 or at times even by misconduct ” (Snyder v. Massachusetts, 291 U. S. 97,106).
The following colloquy took place during the argument of this motion: ‘ ‘ the court : * * * You have a situation here that you are asking me to set aside this verdict because of an act of his own, a voluntary act of his own. This was a voluntary act. Everybody was not striking, everybody was not boycotting the courts. * * * hr. kunstler * * * You say that it is voluntary, and it is voluntary.”
The waiver of a constitutional right must be ‘ ‘ knowing ’ ’ and £ ‘ voluntary ’ ’. The defendant concedes that his failure to appear was voluntary. His deliberate refusal and failure to attend after the trial had commenced was a knowing waiver and indicated ‘1 nothing less than an intention to obstruct the orderly processes of justice ” (United States v. Tortora, 464 F. 2d 1202, 1208, supra). There are cases which hold that a defendant in custody does not have the power to waive his right to be present (Diaz v. United States, 223 U. S. 442, 455, supra; Cross v. United States, 325 F. 2d 629; Evans v. United States, 284 F, 2d 393). The rationale of such cases where a defendant is in custody is that he cannot be present unless ordered to be thei^e. That rationale is not applicable to the circumstances in this ease. Dias (supra) was a case in which the defendant voluntarily absented himself for a short period and consented that the trial proceed in his absence. Further, the statement was dicta since the defendant was at liberty on bail. In Gross (supra) the defendant in custody of a United States Marshal in the next room had not been directed by the court to be brought into the courtroom when the selection of the jury commenced. Likewise in Evans (supra) the court had not directed that the defendant be brought into the courtroom when the jury was called in and reinstructed by the court. None of the cases involved a voluntary refusal by the defendant to present himself in court after he had been ordered to do so.
The defendant has a duty as well as a right to be present at his trial (State v. Hinkle, 176 Kan. 152; People v. Mount, 1 Wheel. Cr. Cas. 411 [N. Y., 1823]). He may not absent himself without permission of the court (People v. Winship, 309 N. Y. 311, supra). The requirement that the accused present himself for trial is one of the earliest established in the criminal law (Kivette v. United States, 230 F. 2d 749, 755, cert. den. 355 U. S. 935).
Some of the colloquy between the court and counsel upon the argument of this motion follows: ‘ ‘ mb. kuhstler : * * * I think all lawyers now agree, under the Illinois against Allen *1081 decision, that a disruptive defendant may be removed from a courtroom and the trial continue without him. But we don’t have a disruptive defendant here at all. That did not occur. This is a question of a defendant who voluntarily, we will assume for the sake of argument, refuses to come to court. Now, at that time, that falls under 260.20. The Legislature said the defendant must be personally present and they gave one exception. This doesn’t fit the one exception, and I think on the statute alone Your Honor should set aside the jury verdict. * # *
“ the court : Now, this man, at that time was very anxious to go to trial. We gave him the trial. Now, he was not disruptive, he sat there at the beginning of the trial. I don’t remember how long he was here at that time, and I am familiar with what you say that the law is that disruptive defendants may be removed. The Allen case tells you that. But here is a man that has gotten a trial, here is a man who was going to be given a trial, don’t you think his conduct in refusing to come the next day is disruptive as far as the administration of justice is concerned, particularly when everybody is shouting that the judges aren’t doing their jobs, they are not giving speedy trials, and everybody wants a trial almost on the same day. We gave him a speedy trial. Doesn’t that border on being disruptive of the administration of justice?
“ mb. kuhstler.- No, Your Honor.”
The defendant contends that the only remedy of the court was to declare a mistrial on its own motion and the only penalty which could be suffered by the defendant was the loss of his right to a speedy trial. The defendant further asserts that he does not see any issue of double jeopardy arising from a declaration of a mistrial. In Allen (397 U. S. 337, 343, supra) the court was careful to note that Trial Judges must have discretion to meet the circumstances of each case and no one formula would be best in all situations. This court equates a defendant’s removal from the courtroom with his voluntary refusal to attend; in both instances he is absent during the trial. The controlling question here is one of waiver. Whether the constitutional prohibition against double jeopardy would be applicable under the circumstances presents a far different question than whether the defendant waived his right to be present at his trial. Thus, the jeopardy question is irrelevant and the court does not pass upon it. (See United States v. Tortora, 464 F. 2d 1202, 1209, n. 5, supra.)
*1082 Upon oral argument, the following colloquy took place between the court and defendant’s counsel: “ the court : Mr. Kunstler, under the circumstances of this case, did I have a right to tell the guard to go down and bring him in and bring him; force him, to force him?
1 ‘ mr. kunstler : You might have had.
‘ ‘ the court : I think I had the right under the Allen case, and other cases.
“ mr. kunstler: Maybe that is essentially what you should have done, or mistrial.
‘ the court : I am glad that you mentioned that because this is the point I want to make. If I had done that, what do you think would have happened over in that jail? The prisoners don’t know why I am taking him out. I can’t come down there and make an announcement: Gentlemen, continue to strike, I am not taking this man out because he is participating, I am taking him out because I want him to finish a case. The prisoners wouldn’t know that. You would have a riot all over Brooklyn, they would wreck that jail, you would have riots on the streets. So, in my discretion, I thought I was using my discretion. I decided not to do that. Do you think that was wrong?
“mr kunstler: No, I am not protesting that. I think that was right. * * * You made a policy decision which I think is a right one.”
The problem in this ease was how to get the defendant into the courtroom. The court could have secured his presence by the use of force. The defendant in his moving papers asserts that a prisoner boycott against this court was in progress. (This matter will be discussed separately.) The atmosphere in the prison could well have been tense and confused. To have sent officers into the defendant’s cell to bind and shackle him and deliver him by force could have precipitated a serious riot. The sight of what was taking place could well have had an emotional impact upon the other prisoners with serious consequences. For what it considered sound reasons the pourt refused to employ that method. Mr. Kunstler agreed that the court’s decision not to employ force was both wise and correct under the circumstances.
Imprisonment for contempt was not an adequate remedy. Considering the crimes charged, the defendant, as a matter of calculated strategy, would have been glad to serve a period of time in confinement for contempt in the hope that the witnesses would not be available for a subsequent trial. One witness was held ip the Bronx in a detention center as a material witness, *1083 and the other girl was lodged in a hotel in Queens. The prosecution would have to incarcerate them for a long period of time to be certain of their availability in the future. In the final analysis the action taken was within the discretion of the court and was designed to fit the situation.
This court is in accord with what was said in Falk v. United States (15 App. D. C. 446, 454-455), and quoted with approval in Allen (397 U. S. 337, 349): “It does not seem to us to be consonant with the dictates of common sense that an accused person * * * should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it. * * * This would be a travesty of justice which could not be tolerated. * * * [W]e do not think that any rule of law or constitutional principle leads us to any conclusion that would be so disastrous as well to the administration of justice as to the true interests of civil liberty.”
There would be nothing to stop the defendant from refusing to appear when it suited his purpose during a second, third, or even a fourth trial. No court can countenance such a course of action by any defendant. A court must not permit a defendant to take advantage of his own wrong (Illinois v. Allen, 397 U. S. 337, 345, supra, Diaz v. United States, 223 U. S. 442, 452, supra; Reynolds v. United States, 98 U. S. 145, 158; Sahlinger v. People, 102 Ill. 241, 247).
The defendant now contends that his refusal to appear was justified because he was exercising a First Amendment right by participating in a prisoner boycott of this court.
The records of the Brooklyn House of Detention show that on July 24, of 55 scheduled to appear, 31-attended, 24 refused; on July 25, of 86 scheduled to appear, 54 attended, 32 refused; on July 26, of 72 scheduled to appear, 52 attended, 20 refused; and on July 27, of 66 scheduled to appear, 45 attended, 21 refused, showing that the prisoner boycott of this court was not unanimous. Despite the argument now urged, no claim was made during the trial that the defendant feared for his safety if he failed to participate in the boycott. Thus, a post-conviction hearing would serve no useful purpose.
Prisoners’ First Amendment rights reach inside prison walls. In the interpretation of the First Amendment there is a distinction between expression and action. “ The Amendment embraces two concepts — freedom to believe and freedom to act. *1084 The first is absolute but, in the nature of things, the second cannot be. ” (Cantwell v. Connecticut, 310 U. S. 296, 303-304.) The rights of free speech and assembly are not absolute (Whitney v. California, 274 U. S. 357, 373; United States v. Vigil, 431 F. 2d 1037,1040, cert. den. 401 U. S. 918). First Amendment rights have appropriate limitations (Sharp v. Sigler, 408 F. 2d 966, 970) and may be cut down where justified by some compelling átate interest (Sobell v. Reed, 327 F. Supp. 1294, 1303; Fortune Soc. v. McGinnis, 319 F. Supp. 9.01, 904).
The State has a compelling interest in the survival of constitutional government (Communications Assn. v. Douds, 339 U. S. 382). Mr. Justice Brennan in Allen said (397 U. S. 337, 347): “ The safeguards that the Constitution accords to criminal defendants presuppose that government has a sovereign prerogative to put on trial those accused in good faith of violating valid laws. Constitutional power to bring an accused to trial is fundamental to a scheme of ‘ ordered liberty ’ and prerequisite to justice and peace.”
The public interest demands that criminal trials be prosecuted with dispatch (CPL 30.30). To allow a defendant at his pleasure, to break up a trial in progress under the guise of a First Amendment right defeats constitutional government. The defendant’s conduct is not immunized by the First Amendment. The administration of justice is not so delicate that it cannot protect itself from attack from those who defy it. A trial once commenced may not be stopped by the unilateral refusal to be judged.
Finally, the defendant was amply warned that the trial would proceed in his absence if he failed to appear. He was given every opportunity to be present. No improper means prevented him from being present.
Under the circumstances, the defendant by his conduct waived his right to be present at his trial,- and the court properly proceeded with the trial in his absence. Accordingly, the motion is denied.