617 P.2d 1141

**STATE of Arizona, Appellee,**

v.

**James Edward MORSE II, Appellant.**

**No. 4950–PR.**

Supreme Court of Arizona,
In Banc.

Sept. 18, 1980.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Division, Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

Donald S. Klein, James W. Stuehringer, Schotland & Stuehringer, Tucson, for appellant.

GORDON, Justice:

Defendant James Edward Morse II was convicted by a jury of theft of a motorcycle, found by the trial judge to have had a prior felony conviction, and sentenced to four years in the Arizona State Prison.

On appeal to the Court of Appeals, defendant raised six issues for review: (1) statements made by defendant to an investigatory officer before defendant was given *Miranda* warnings were improperly admitted into evidence, (2) the court's refusal to instruct the jury to disregard such statements denied defendant due process, (3) the court erred by instructing the jury that ignorance of the law is no defense, (4) the court's instruction on presumption of innocence was insufficient, (5) the prosecutor's policy of refusing to dismiss allegations of prior convictions once trial had started was unconstitutional, and (6) the court's requirement that defendant be present at his trial on the allegation of a prior felony conviction denied defendant due process.

The Court of Appeals affirmed defendant's conviction and sentence and denied his motion for rehearing. We accepted defendant's petition for review, taking jurisdiction pursuant to A.R.S. § 12–120.24 and Rule 31.19, Rules of Criminal Procedure, 17 A.R.S. We affirm the judgment and sentence of the Superior Court. The opinion of the Court of Appeals, 127 Ariz. 38, 617 P.2d 1154 (1980), is vacated.

The facts relevant to our decision are these: On January 12, 1979, a Tucson police officer patrolling the east side of Tucson was flagged down by a citizen who directed his attention to defendant and two other men sitting on motorcycles in a local shopping center parking lot. The citizen indicated that he believed the motorcycle on which defendant was seated had been stolen from him the week before. The police officer approached the three men and asked them for identification. Defendant was unable to produce either his driver's license or a registration for the motorcycle on which he was seated, a 1978 Yamaha, but identified himself as James Morse. A registration check on the motorcycle's license plate revealed that the plate had been issued to a Mr. Gidley for a '71 Honda. After the officer noticed that the vehicle identification number on the gooseneck of the bike appeared to have been ground off, he ran a registration check on the vehicle identification number found on the engine, which revealed that the bike belonged to a Mr. Manes and that there was no report of it having been stolen.

The officer asked defendant if the motorcycle belonged to him, to which defendant responded that it did. The officer then asked defendant where he got the bike, to which defendant responded that he had bought it from a friend of one of the two men sitting with him. After defendant's companion denied any knowledge about such a purchase, the officer repeated his questions regarding defendant's acquisition of the bike. Upon receiving the same answers, he arrested defendant and administered the *Miranda* warnings. Defendant then stated that he had lied about purchasing the bike and claimed that he had found it in a desert area near his house. All of

these statements were admitted into evidence over defendant's objection at his trial. He asserts in his appeal that the statements in question should have been excluded because they were made in response to police interrogation before he was given his *Miranda* warnings.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. Finding the compulsion to incriminate one's self to be "inherent in custodial surroundings," the Supreme Court in *Miranda* prescribed certain procedural safeguards—the giving of *Miranda* warnings—to prevent such compelled self–incrimination during "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

■ Defendant here claims that he made the statements in question at a time when he had been "deprived of his freedom" in a "significant way." The United States Supreme Court has recently explained that only where a restriction on a person's freedom has been such as to render him "in custody" are *Miranda* warnings required. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). Whether a suspect is "in custody" is determined by an objective test: Would a reasonable man feel that he was deprived of his freedom in a significant way? *State v. Hatton*, 116 Ariz. 142, 568 P.2d 1040 (1977); *cf. Lowe v. United States*, 407 F.2d 1391 (9th Cir. 1969); *State v. Mumbaugh*, 107 Ariz. 589, 491 P.2d 443 (1971). The interrogation in this case occurred in a shopping center parking lot around 12:00 noon and appears from the record to have occurred within a fairly short time period. The questioning was investigatory, in response to a citizen's complaint that the suspect was in possession of a stolen vehicle, for the purpose of determining whether the suspect might have committed a crime. One policeman and three civilians were present during the interrogation. The officer neither told the suspect that he was under arrest nor indicated that he was not free to go. There was no use nor display of force. All of the above factors militate in favor of the position that defendant was not "in custody" when he made the statement in question.

Further, the interrogation here was not the type with which the *Miranda* court was concerned. The evil to which the Supreme Court addressed itself was "incommunicado interrogation of individuals in a police–dominated atmosphere, resulting in self–incriminating statements without full warnings of constitutional rights." 384 U.S. at 445, 86 S.Ct. at 1612, 16 L.Ed.2d at 707. The Court explicitly excluded general on–the–scene questioning for the purpose of investigating crime from its definition of "custodial interrogation." 384 U.S. at 477–78, 86 S.Ct. at 1629–30, 16 L.Ed.2d at 725–26. Because we feel the officer's questions in the case before us fall into the category of on–the–scene questioning and not custodial interrogation, we find that *Miranda* warnings were not necessary, and that the statements made by defendant in response to these questions were properly admitted by the trial court.

■ Defendant emphasizes that at the time the statements were made, the investigation had focused on the defendant, the officer had probable cause to arrest defendant for driving a motor vehicle without a driver's license or registration, and the officer felt that defendant was not free to go. The United States Supreme Court has rejected the argument " 'that the principle of *Miranda* * * * should be extended to cover interrogation in non–custodial circumstances after a police investigation has focused on the suspect.' " *Beckwith v. United States*, 425 U.S. 341, 345, 96 S.Ct. 1612, 1615, 48 L.Ed.2d 1, 6–7 (1976). It is not the *focus* of the interrogation but the *custody* of the suspect which triggers the requirement of *Miranda* warnings. *Beckwith, supra.*

■■ Similarly, although Arizona courts have recognized that the time of formal arrest is an inadequate guideline as to when *Miranda* warnings must be given, *see State v. Tellez*, 6 Ariz.App. 251, 431 P.2d 691 (1967), existence of probable cause to arrest for a crime does not in and of itself require their administration. *State v. Kennedy*, 116 Ariz. 566, 570 P.2d 508 (App.1977). Rather "[c]ustody is the crucial issue in determining whether such warning is necessary." *Id.* at 569, 570 P.2d at 511; *see State v. Landrum*, 112 Ariz. 555, 544 P.2d 664 (1976). The presence of probable cause to arrest defendant here for driving a motor vehicle without a driver's license or vehicle registration did not evoke the necessity of advising defendant of his constitutional rights.

■ The officer's testimony that the suspect was not free to go during the interrogation adds nothing to defendant's position. The unexpressed intent of a police officer to detain a suspect whom he is interrogating does not constitute "custodial interrogation." *United States v. Smith*, 441 F.2d 539 (9th Cir. 1971); *Lowe v. United States*, 407 F.2d 1391 (9th Cir. 1969); *State v. Kennedy*, 116 Ariz. 566, 570 P.2d 508 (App.1977). *But see State v. Mayes*, 110 Ariz. 318, 518 P.2d 568 (1974). Defendant offered no evidence at the hearing on the motion to suppress or at trial that the officer communicated in any way his intention to detain defendant.

Defendant requested the trial court to instruct the jury that any statement which the defendant made while in custody before he was given *Miranda* warnings should be considered involuntary. He now urges that the court's refusal to give such an instruction was error.

■ Defendant's requested instruction is based on an incorrect legal assumption. The necessity of giving *Miranda* warnings to a suspect relates not to the voluntariness of a confession but to its admissibility. *State v. Stone*, 122 Ariz. 304, 594 P.2d 558 (App.1979). Generally, "[t]he admissibility of a given piece of evidence is for the judge to determine." 9 J. Wigmore, Evidence § 2550 (3d ed. 1940). Although the Arizona rule is that the trial court must, upon defendant's request, instruct the jury on voluntariness of defendant's statements, *State v. Cobb*, 115 Ariz. 484, 566 P.2d 285 (1977), the question of admissibility of statements because of possible *Miranda* violations need not be presented to the jury, but is controlled by the independent determination of the trial judge. The court's refusal to give defendant's requested instruction was not error.

Defendant next claims that the following instruction given by the court misstated the law and confused the jury: "It is no defense that a person did not know that his act was unlawful or that he believed it to be lawful." The Court of Appeals felt the defense counsel's "general objection to an instruction regarding ignorance of the law" was insufficient to preserve the objection for appeal under Rule 21.3(c), 17 A.R.S. Rules of Criminal Procedure. We disagree.

■ Before closing arguments, defense counsel objected to the giving of the above instruction in the following manner.

"And I object to the Court's decision to give modified State's No. 12. We had a fairly lengthy discussion about the concept of ignorance of the law being a defense. I don't recognize the statement of ignorance of the law is no defense as a correct statement. I don't think that State's No. 2 is an accurate statement of that and I think it's going to confuse the jury, particularly the word: Defendant's state of mind or belief is going to be—excuse me, for the record, that's 12."

We feel that the above language, although inartful, states adequately the matter to which defendant objects and the grounds of his objection. Defendant has thereby preserved his objection to the giving of the above instruction. We turn now to the merits of that objection.

Defendant contends that the crime of which he was convicted "is a specific intent crime" and that "the jury had to determine both that the [defendant] knew or believed that the property was stolen and that he specifically intended to prevent the rightful

owner from again possessing the property." Evidence was produced at trial to show that the defendant "possessed the motorcycle believing that he had the legal right to its possession while he applied for an abandoned title, and that he had no obligation to determine the ownership of the motorcycle." Defendant argues that, had the offending instruction been omitted, this evidence of his ignorance or mistake as to the law could have led the jury to believe that he lacked "the requisite specific intent knowledge" to be convicted of having violated A.R.S. § 13–1802.

A.R.S. § 13–1802, with which defendant was charged, is a newly enacted statute, effective October 1, 1978, which consolidates Arizona's prior multiple theft offenses and abolishes Arizona's previous requirement in theft offenses of intent to permanently deprive an owner of his or her property.[1] *See R. Gerber, Criminal Law of Arizona*, 247–51. The new theft statute provides in part as follows:

> "*Theft; classification,* A. A person commits theft if, without lawful authority, such person knowingly: * * * (5) Controls property of another knowing or having reason to know that the property was stolen * * *." A.R.S. § 13–1802.

The above–quoted provision replaced former A.R.S. § 13–621, which penalized receiving stolen property as follows:

> "*A person who, for his own gain, or to prevent the owner from again possessing the property, buys, sells, possesses,* conceals, or receives personal property, knowing or having reason to believe that the property is stolen, is guilty * * *." A.R.S. § 13–621 (Supp.1957–1978) (Repealed October 1, 1978).

It is generally accepted that specific intent was an element of the offense of receiving stolen property under former A.R.S. § 13–621. Many cases so held, *see, e. g., State v. Fleming,* 117 Ariz. 122, 571 P.2d 268 (1977); *State v. Tellez,* 6 Ariz.App. 251, 431 P.2d 691 (1967), and the element of specific intent was spelled out in the statute itself in the following words: "A person who * * * *for his own gain or to prevent the owner from again possessing the property* * * *." A.R.S. § 13–621 (Supp. 1957–1978) (Repealed October 1, 1978) (Emphasis supplied.)

In contrast, while the new theft statute, § 13–1802, explicitly requires a culpable mental state of intent for the two classifications of theft described in its subsections (1) and (3), such a requirement is absent from the remaining four classifications of theft, including subsection (5) of which defendant was convicted.[2] The elimination of language concerning intent from Arizona's statute prohibiting receipt of stolen property indicates that the Legislature intended to remove that element from the offense. The presence of an element of intent in two of the other five subsections of the new statute consolidating and modernizing Arizona's theft laws strengthens that interpretation.

---

1. It appears that in place of this prior specific intent requirement is one that the act be committed "without lawful authority." A.R.S. § 13 1802.

2. A.R.S. § 13 1802 provides as follows:

   "*Theft; classification*

   "A. A person commits theft if, without lawful authority, such person knowingly:

   "1. Controls property of another *with the intent to deprive* him of such property; or

   "2. Converts for an unauthorized term or use services or property of another entrusted to the defendant or placed in the defendant's possession for a limited, authorized term or use; or

   "3. Obtains property or services of another by means of any material misrepresentation *with intent to deprive* him of such property or services; or

   "4. Comes into control of lost, mislaid or misdelivered property of another under circumstances providing means of inquiry as to the true owner and appropriates such property to his own or another's use without reasonable *efforts to notify the true owner; or*

   "5. Controls property of another knowing or having reason to know that the property was stolen; or

   "6. Obtains services known to the defendant to be available only for compensation without paying or an agreement to pay such compensation or diverts another's services to his own or another's benefit without authority to do so." (Emphasis supplied.)

We conclude, therefore, that the specific intent which constituted an element of receiving stolen property under former A.R.S. § 13–621 has been excluded from the crime of theft by controlling stolen property under current A.R.S. § 13–1802 A(5).

Such a conclusion is in harmony with the use in the new criminal code of the culpable mental states defined in A.R.S. § 13–105(5): "intentionally," "knowingly," "recklessly" and "criminal negligence." A.R.S. § 13–1802A(5) specifies the mental state of "knowingly" and requires knowledge or reason to know that the property in question was stolen. However, the knowledge which defendant claims he lacked is not among the types of knowledge which constitute elements of § 13–1802A(5). Rather, defendant claims that he lacked the knowledge that what he did violated the law. To this claim, A.R.S. § 13–204B is directly applicable: "Ignorance or mistake as to a matter of law does not relieve a person of criminal responsibility." It is generally accepted that ignorance, or lack of knowledge, of the law which forbids the conduct with which one is charged is no defense. See W. LaFave & A. Scott, Jr., Criminal Law, § 47 at 356–57 (1972). A.R.S. § 13–204B now confirms that concept in Arizona.

Because specific intent is not an element of the crime of which defendant was convicted and because ignorance or lack of knowledge that one's conduct violated the law is no defense to criminal liability, the trial court committed no error by instructing the jury as it did regarding ignorance of the law.

Defendant next claims, relying heavily on *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1920, 56 L.Ed.2d 468 (1978), that the trial court's refusal to give defendant's requested instruction on presumption of innocence violated defendant's right to a fair trial as guaranteed by the due process clause of the Fourteenth Amendment. The holding in *Taylor* is inapplicable because there the trial court refused to give any instruction on presumption of innocence, whereas here the trial court gave the following instruction:

"The law does not require a defendant to prove his innocence. He is presumed by law to be innocent. This means the State must prove all of its case against the defendant. The State must prove the defendant guilty beyond a reasonable doubt."

We have said that a defendant's requested jury instruction need not be given if its substance is covered by other instructions given by the trial court. *State v. Melendez*, 121 Ariz. 1, 588 P.2d 294 (1978). The trial court's presumption of innocence instruction quoted above is found in the Recommended Arizona Jury Instructions, R.A.J.I. Crim.Stand. 6, and was held by us to be adequate in *State v. Whitaker*, 112 Ariz. 537, 544 P.2d 219 (1975). We conclude that the trial court's instruction on presumption of innocence fulfilled both state and federal requirements.

Defendant next contends that he was denied due process and his sentence was cruel and unusual because after his conviction for theft, the prosecutor, in accordance with the Pima County Attorney's Office policy, refused to dismiss the allegation of a prior felony. Defendant argues that this penalized his exercise of his constitutional right to go to trial and that penalizing a person for doing what the law allows him to do violates due process. This argument presents a novel question: Does a prosecutorial policy to suspend plea bargaining at the time trial begins violate due process because it punishes defendant for exercising his right to go to trial?

We begin by noting that in Arizona there is no right to a plea bargain. Indeed, the legitimacy of such a practice was only finally established by the federal Supreme Court's opinion in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), see *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Far from being available upon a defendant's demand, a plea bargain can be obtained only by agreement among the defendant, his counsel and the prosecuting

attorney, subject to the approval of the trial court. Further, it can be revoked by any party at any time prior to its acceptance by the court. 17 A.R.S., Rules of Criminal Procedure, Rule 17.4(b) and (d).

Plea bargaining springs from the mutual advantages it brings to both prosecutors and defendants. For the defendant, it can eliminate the exposure to a higher penalty and the burdens of a trial. It can shorten the period of pre-trial incarceration, create certainty as to the outcome of the criminal prosecution and bring quick imposition of release, rehabilitation or incarceration. For the prosecution, it can lead to prompt and early disposition of cases, savings of judicial, prosecutorial and penal resources and early incarceration of those who are a menace to the public, yet sparing those not a public nuisance the corrosive idleness of awaiting trial in jail.

Generally, once a trial begins, a prosecutor gains less advantage and has less reason to negotiate a plea bargain than prior to trial. A decision within a prosecutor's office to cut off plea bargaining at the time trial begins follows logically from one of the reasons for engaging in plea bargaining: judicial economy through the avoidance of trials. As the federal Supreme Court has said, "If every criminal charge were subjected to a full-scale trial, the States and Federal Government would need to multiply by many times the number of judges and court facilities." *Santobello, supra*, 404 U.S. at 260, 92 S.Ct. at 498, 30 L.Ed.2d at 432.

Our country's legal system vests broad discretion in prosecuting attorneys. This discretion exists in the exercise of plea bargaining negotiations. *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). In *Bordenkircher*, the prosecutor during plea bargaining negotiations offered to recommend a sentence of five years in prison if the defendant would plead guilty to the indictment, but said that in the event defendant refused to plead guilty, he would seek another indictment which would expose defendant to a mandatory sentence of life imprisonment. The

defendant declined to plead guilty, the prosecution obtained the other indictment, and the defendant was ultimately sentenced to a life term in the penitentiary. The Supreme Court held that the prosecutor's conduct did not violate the Due Process Clause of the Fourteenth Amendment, explaining:

"To punish a person because he had done what the law plainly allows him to do is a due process violation of the most basic sort (citations omitted) and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' (citations omitted.) But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Id.* at 363, 98 S.Ct. at 668, 54 L.Ed.2d at 610–611.

We hold, in light of the above, that the Pima County Attorney's Office policy which suspends plea bargaining at the time trial begins does not punish defendant for exercising his right to go to trial and therefore does not violate the Due Process Clause of the Fourteenth Amendment.

Finally, defendant complains that the trial court's requirement that he be present at his trial on the allegation of a prior felony for purposes of identification denied appellant due process. Contrary to defendant's contention, requiring a defendant to be present at his trial and to identify himself if so required by the court is a long-established practice and in harmony with due process. *See United States v. Denno*, 355 F.2d 731 (2d Cir. 1966), *aff'd sub nom. Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Kivette v. United States*, 230 F.2d 749 (5th Cir. 1956), *cert. denied*, 355 U.S. 935, 78 S.Ct. 419, 2 L.Ed.2d 418 (1958); *Swingle v. United States*, 151 F.2d 512 (9th Cir. 1945); *State v. Hinkle*, 176 Kan. 152, 269 P.2d 465 (1954).

Accordingly, the opinion of the Court of Appeals is vacated. The judgment and sentence of the Superior Court are affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.