NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

CHRISTOPHER WAYNE CHAMBERS, *Appellant*.

No. 1 CA-CR 20-0112
FILED 1-26-2021

---

Appeal from the Superior Court in Mohave County
No. S8015CR201800699
The Honorable Billy K. Sipe, Jr., Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge David D. Weinzweig joined.

---

**W I L L I A M S**, Judge:

**¶1**        Christopher Wayne Chambers appeals from his convictions and sentences for burglary in the first degree, aggravated assault and criminal damage. Chambers argues that the prosecutor's withdrawal of a plea offer was vindictive, there was insufficient trial evidence the burglary was a dangerous offense, and the trial court erred by allowing the state to amend the aggravated assault charge the day of trial. For reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        In April 2018, Bullhead City Police Officer Turnbull responded to a burglary in progress. Upon entering the home through a back door that had been kicked in, Officer Turnbull encountered Chambers, who tried to walk past the officer and out of the home. Officer Turnbull pushed Chambers and ordered him to the ground with his gun drawn. Chambers stepped back, stared at Officer Turnbull, and then pulled out a folding knife from his pocket. Chambers opened the knife and told the officer, "You don't know what I'm going through . . . you're going to have to kill me." A second officer who had arrived on scene tazed Chambers and arrested him. The officers found jewelry boxes, cash and cigarettes in Chambers' pockets.

**¶3**        Once indicted, the state extended a plea offer to Chambers. Before the plea offer expired on August 1, 2018, the state assigned a different prosecutor to the case. The newly-assigned prosecutor agreed to honor the plea offer through the original expiration date. After that date, the prosecutor and defense counsel continued plea discussions. Defense counsel questioned Chambers' competence to accept the plea offer, and with the approval of the trial court, postponed multiple change of plea hearings to obtain Chambers' mental health records. In April 2019, the state withdrew its plea offer. Defense counsel informed the court that "another [plea] offer [] was made," and asked that the matter be set for

another change of plea hearing. Defense counsel stated that "one plea or another will be entered" at the next hearing set in May. Soon after, Chambers moved to dismiss the complaint, or in the alternative, sought an order directing the prosecutor to reinstate the original plea offer, arguing the withdrawal of the offer was vindictive and violated defendant's Sixth Amendment right to counsel. The court denied both requests.

¶4        The matter proceeded to a trial by jury in October 2019. On the first day of trial, before the jury had been empaneled, Chambers requested a jury instruction for disorderly conduct as a lesser-included offense of the aggravated assault charge. The state, in response, moved to amend the charge of aggravated assault from A.R.S. § 13-1203(A)(3) to A.R.S. § 13-1203(A)(2). The court granted the amendment over Chambers' objection.

¶5        The jury found Chambers guilty as charged. The court sentenced him to nineteen years in prison with appropriate pre-sentence incarceration credit and ordered Chambers to pay $7,370.27 in restitution. This timely appeal followed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031 and -4033(A)(1).

## DISCUSSION

*I.        The Superior Court did not Abuse its Discretion in Denying Defendant's Motion to Dismiss and Request to Reinstate the Original Plea Offer*

¶6        "We review rulings on motions to dismiss for vindictive prosecution for an abuse of discretion." *State v. Mieg*, 225 Ariz. 445, 447, ¶ 9 (App. 2010).

¶7        Chambers argues the prosecutor was vindictive in withdrawing the initial plea offer. As a general matter, criminal defendants have no constitutional right to a plea agreement. *State v. Draper*, 162 Ariz. 433, 440 (1989); *State v. Morse*, 127 Ariz. 25, 31 (1980). "The prosecution retains discretion to determine whether to make a plea offer, the terms of any offer, the length of time an offer will remain open, and the other particulars of plea bargaining." *Rivera-Longoria v. Slayton*, 228 Ariz. 156, 159, ¶ 13 (2011). Despite this broad latitude afforded prosecutors, constitutional guarantees of due process protect criminal defendants against prosecutorial vindictiveness, *State v. Tsosie*, 171 Ariz. 683, 685 (App. 1992), which occurs when the state "retaliates against a defendant for exercising a constitutional or statutory right," *State v. Brun*, 190 Ariz. 505, 506 (App. 1997). A defendant may show prosecutorial

vindictiveness by proving, objectively, that the prosecutor's charging decision was motivated by a desire to punish, or a defendant may rely on a presumption of vindictiveness where actual vindictiveness is difficult to prove. *Id.* A defendant may rely on this presumption if the circumstances establish a realistic likelihood of vindictiveness. *Mieg*, 225 Ariz. at 448, ¶ 11.

**¶8**        Chambers concedes the lack of evidence supporting actual vindictiveness, but claims because the second prosecutor admitted to disagreeing with the first prosecutor's initial plea offer, a presumption of vindictiveness exists. However, Chambers is required to make a prima facie showing that withdrawing a plea offer is "more likely than not attributable to vindictiveness by the prosecutor" before the burden shifts to the prosecutor to overcome the presumption. *Id.* at 448, ¶ 12 (quoting *Alabama v. Smith*, 490 U.S. 794, 801 (1989)). Chambers has failed to show how withdrawing a plea offer, well after it would have expired given its deadline in August 2018, indicates vindictive behavior. Though the second prosecutor admitted to disagreeing with the initial plea offer, she held the offer open, honoring the original deadline. And, as noted by the trial court, the prosecutor continued to negotiate with defense counsel. This behavior does nothing to indicate a likelihood of vindictiveness.

**¶9**        Chambers relies on *State v. Draper* to argue that the prosecutor's action in revoking the initial offer, while defense counsel was investigating the defendant's mental capacity to enter into a plea agreement, impaired the defendant's ability to enter a voluntary, knowing and intelligent guilty plea. 162 Ariz. at 436. However, *Draper* deals with the determination of whether a plea *agreement* was valid, not whether a plea *offer* was properly revoked. *Id.* At any rate, Chambers has no constitutional right to a plea agreement, *Morse*, 127 Ariz. at 31, and it is within the state's discretion to withdraw a plea offer which the court has not accepted, Arizona Rule of Criminal Procedure 17.4(b) (even if a plea is offered by the state and accepted by a defendant, "any party may withdraw from an agreement before the court accepts it").

**¶10**        Chambers also argues that withdrawing the plea offer violated his right to effective assistance of counsel. An ineffective assistance of counsel claim, however, cannot be brought on direct appeal but must be raised in a post-conviction proceeding. *State ex rel. Thomas v. Rayes*, 214 Ariz. 411, 415, ¶ 20 (2007) ("We therefore hold . . . that a defendant may bring ineffective assistance of counsel claims *only* in a Rule 32 post-conviction proceeding—not before trial, at trial, or on direct review."); *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002) ("[I]neffective assistance

of counsel claims are to be brought in Rule 32 proceedings. Any such claims improvidently raised in a direct appeal, henceforth, will not be addressed by appellate courts regardless of merit.").

**¶11**         Chambers has shown no error in the trial court's denial of his motion to dismiss or to reinstate the original plea offer.

II.      *Sufficient Evidence Established that First-Degree Burglary was a Dangerous Offense*

**¶12**         This court reviews sufficiency of the evidence claims de novo. *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014). We resolve "any conflicts in the evidence against the defendant" and view the facts in the light most favorable to supporting the verdict. *Id.* We will only reverse the jury's decision if the verdict is not supported by substantial evidence. *State v. Tucker*, 231 Ariz. 125, 138, ¶ 27 (App. 2012). "Substantial evidence is evidence that reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *Pena*, 235 Ariz. at 279, ¶ 5 (internal quotations omitted).

**¶13**         First-degree burglary requires the defendant "knowingly possess[] explosives, a deadly weapon or a dangerous instrument in the course of committing any theft or any felony" while also violating either A.R.S. § 13-1506 or -1507. A.R.S. § 13-1508. Relevant here is A.R.S. § 13-1507, which requires a person enter or remain "unlawfully in or on a residential structure with the intent to commit any theft or any felony therein." Although first-degree burglary is not an inherently dangerous offense, *State v. Larin*, 233 Ariz. 202, 213, ¶ 40 (App. 2013), it may become so if it "involv[es] the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument," A.R.S. § 13-105(13). "An allegation of dangerousness essentially adds to the underlying offense an element that subjects the defendant to increased penalties." *Larin*, 233 Ariz. at 211, ¶ 30 (internal quotations omitted).

**¶14**         Chambers argues he did not use the knife during the burglary, but instead only pulled it out after confronted by Officer Turnbull. Chambers pulled out, opened, and displayed the knife to the officer *while* he was in the home and still in the act of the burglary. *See* A.R.S. § 13-1507(A). He had not yet left the residence and had stolen items in his pockets. Officer Turnbull testified Chambers failed to comply with requests to get on the ground and drop the knife, and that Chambers held the knife in a threatening posture. On this record, substantial evidence existed for a jury to reasonably conclude this first-degree burglary was a

dangerous offense because it involved the threatening exhibition of a deadly weapon.

III.     *The Superior Court Abused its Discretion in Granting the Amendment to the Indictment, however, the Error was Harmless*

¶15     We review a trial court's amendment of a charge for an abuse of discretion. *State v. Johnson*, 198 Ariz. 245, 247, ¶ 4 (App. 2000). Arizona Rule of Criminal Procedure 13.5(b) provides "a charge may be amended only to correct mistakes of fact or remedy formal or technical defects." Further, "[t]he charging document is deemed amended to conform to the evidence admitted during any court proceeding." Ariz. R. Crim. P. 13.5(b). "A defect may be considered formal or technical when its amendment does not operate to change the nature of the offense charged or to prejudice the defendant in any way." *State v. Bruce*, 125 Ariz. 421, 423 (1980). When elements of one offense materially differ from those of another, even when the two are defined in different subsections of the same statute, they are distinct and separate crimes. *State v. Freeney*, 223 Ariz. 110, 113, ¶ 16 (2009).

¶16     Here, the indictment references A.R.S. § 13-1203(A)(3), reflecting that a person commits assault by knowingly touching another individual with the intent to injure, insult or provoke. The charge was amended on the first day of trial to instead reference A.R.S. § 13-1203(A)(2), which provides that assault consists of the intentional placing of another person in reasonable apprehension of imminent physical injury. These offenses, though under the same statute, have different elements where one requires a physical touching and the other requires placing another in apprehension of imminent physical injury. "Because the amended indictment altered the elements of the charged offense, it constituted a change in the nature of the offense" violating Rule 13.5(b). *Freeney*, 223 Ariz. at 113, ¶ 17.

¶17     However, a violation of Rule 13.5(b) does not require automatic reversal. *Id.* at 113, ¶ 21. Instead, such a violation is "neither prejudicial per se nor structural error." *Id.* at 114, ¶ 26. "[B]ecause [Chambers] objected to the amendment, we review for harmless error" requiring the state show that the error was harmless beyond a reasonable doubt. *Id.*

¶18     Chambers had notice the state was alleging and intending to prove aggravated assault under the reasonable apprehension theory, A.R.S. § 13-1203(A)(2), rather than the theory requiring a touching, A.R.S.

§ 13-1203(A)(3). No evidence, either pre-trial or during trial, showed that Chambers touched Officer Turnbull, let alone touched him with his knife.[1] Further, Defense counsel's own request for a jury instruction on felonious disorderly conduct, as a lesser-included offense of the aggravated assault charge, indicates Chambers was on notice because disorderly conduct, as a felony, could *only* be a lesser-included offense under the amended charge of A.R.S. § 13-1203(A)(2), not the originally charged A.R.S. § 13-1203(A)(3). *See* A.R.S. § 13-2904(A)(6), (B).

¶19 Though Chambers objected to the amendment, he "never suggested that the amendment affected, let alone prejudiced, his litigation strategy, trial preparation, examination of witnesses, or argument; nor did he request a trial continuance or recess." *Freeney*, 223 Ariz. at 115, ¶ 28. Thus, although it was error for the trial court to amend the charge the day of trial contrary to *Freeney's* directive "that Rule 13.5(b) should not be carelessly invoked," *id.* at 115, ¶ 28 n.3, the error was harmless because Chambers had notice of the state's theory of aggravated assault.

¶20 Finally, Chambers contends the amended indictment violated the Sixth Amendment. "A Sixth Amendment violation occurs when the defendant received insufficient notice and is therefore actually prejudiced by a new or amended charge." *Id.* at 115, ¶ 29. For the same reasons noted *supra* ¶ 18, Chambers had notice and was not prejudiced.

## CONCLUSION

¶21 For the forgoing reasons, we affirm Chambers' convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[1] An aggravated assault occurs when an individual commits assault, as prescribed in A.R.S. § 13-1203, aggravated by some additional element, here using a deadly weapon or dangerous instrument. A.R.S. § 13-1204(A)(2).